## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD SEEKS, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-02394 |
| Plaintiff, | Honorable John J. Tharp, Jr. |
| v. | |
| THE BOEING COMPANY, DENNIS A. MUILENBURG, and GREGORY D. SMITH, | |
| Defendants. | |
| MERCER BUSCH, on behalf of himself and all others similarly situated, | Case No. 1:19-cv-03548 |
| Plaintiff, | Honorable John J. Tharp, Jr. |
| v. | |
| THE BOEING COMPANY, DENNIS A. MUILENBURG, GREGORY D. SMITH, and KEVIN McALLISTER, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
ROBERT W. KEGLEY SR., AS TRUSTEE OF THE
ROBERT W. KEGLEY SR. REVOCABLE LIVING TRUST U/A DTD 04/16/2003,
FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

Putative class member Robert W. Kegley Sr. ("Kegley"), as Trustee of the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003, respectfully submits this Memorandum of Law in support of his Motion seeking an Order: (1) consolidating the above-captioned actions and any related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42a"); (2) appointing Kegley as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (3) approving the selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel and Caffarelli & Associates Ltd. ("Caffarelli") as Liaison Counsel for the class; and (4) granting such other and further relief as the Court may deem just and proper.[1]

## I.    INTRODUCTION

Presently pending in this District are the two above-captioned securities class action lawsuits (the "Related Actions") brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against The Boeing Company ("Boeing" or the "Company") and certain of its executive officers (collectively, "Defendants"). The Related Actions are brought on behalf of investors who purchased or acquired Boeing securities between January 8, 2019, and May 8, 2019 (the "Class Period").[2] Because the Actions involve common issues of law and fact, Kegley respectfully submits that the Court should consolidate the Related Actions pursuant to Rule 42(a).

---

[1]    All references to "Robert W. Kegley Sr." or "Kegley" in this litigation are to Robert W. Kegley Sr. in his capacity as trustee of the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003.

[2]    At the lead plaintiff stage, the longest-pled class period controls. *See In re Bank of Am. Corp. Sec. Derivative and Emp't Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009) (calculating financial interest using "the longest class period identified"). As such, Kegley relies on the class period alleged in *Busch v. The Boeing Co., et al.*, No. 1:19-cv-03548 (N.D. Ill.), in assessing his financial interest.

After consolidation, the PSLRA governs the selection of the Lead Plaintiff in class actions asserting claims under the federal securities laws. Specifically, the PSLRA requires courts to appoint as Lead Plaintiff the movant: (1) making a timely motion under the PSLRA's sixty-day deadline; (2) who asserts the largest financial interest in the litigation; and (3) who also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Kegley respectfully submits that he is the presumptively "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. Kegley's Motion is timely, and his losses of approximately $885,120 under a last-in, first-out ("LIFO") basis in connection with his transactions in Boeing securities during the Class Period represent the largest known financial interest in the relief sought by the class. *See* Exs. A & B to the Declaration of Sharan Nirmul in Support of the Motion of Robert W. Kegley Sr., as Trustee of the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003, for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (the "Nirmul Decl."); *infra* Section III.B.ii; *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2012 WL 3779311, at *5 (N.D. Ill. Aug. 28, 2012) (appointing individual movant with largest losses as lead plaintiff).

In addition to asserting the largest financial interest, Kegley satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the class and because he will fairly and adequately represent the class. *See infra* Section III.B.iii. Kegley fully understands the Lead Plaintiff's obligations to the class under the PSLRA, and is willing and able to undertake those responsibilities to ensure the vigorous prosecution of the Related Actions.

Finally, Kegley has retained experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, Kegley's selection of Kessler Topaz as Lead

Counsel and Caffarelli as Liaison Counsel for the class should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."); *Groupon*, 2012 WL 3779311, at *5-6 (approving movant's selection of lead counsel).

## II. FACTUAL BACKGROUND

Boeing, a Delaware corporation headquartered in Chicago, Illinois, is one of the world's major aerospace firms. Boeing produces, amongst others, the 737 MAX commercial aircraft, the model involved in two recent high-profile airline crashes occurring on October 29, 2018, and March 10, 2019.

The Related Actions allege that Defendants made a series of materially false and/or misleading statements and/or omissions during the Class Period. Specifically, Defendants misstated or omitted: (1) that the Company's 737 MAX airplanes were significantly less safe than other models due to engineering compromises; (2) necessary safety features to address the aforementioned safety issues were being sold as "optional" add-ons; (3) that most airlines did not purchase these add-ons; and (4) that the Federal Aviation Administration ("FAA") had delegated the certification process for Boeing's new flight control system to Boeing itself, creating a conflict of interest, as the Company was trying to rush the 737 MAX to market.

On March 10, 2019, a Boeing 737 MAX operated by Ethiopian Airlines ("Ethiopian Airlines Flight 302") crashed several minutes after takeoff, killing all 149 passengers and eight crew members on board. On March 11, 2019, Ethiopian Airlines announced that it was grounding its fleet of 737 MAX aircraft. That same day, the China Civil Aviation Administration grounded all 737 MAX aircraft. On this news, the share price of Company common stock fell $47.13 per

share over two trading-days, or more than 11%, from a close of $422.54 per share on March 8, 2019, to close at $375.41 per share on March 12, 2019.

Then, on March 17, 2019, *The Seattle Times* released a report detailing that Boeing's initial safety analysis of the aircraft was crucially flawed and revealing that the FAA had delegated much of its regulatory oversight of Boeing's aircraft, including certifying safety, to Boeing. Additionally, on March 18, 2019, *Bloomberg* reported that U.S. authorities began a criminal investigation into the Ethiopian Airlines Flight 302 accident. On these disclosures, Boeing's share price fell $6.71 per share, from a close of $378.99 per share on March 15, 2019, to close at $372.28 per share on March 18, 2019.

Then, on March 21, 2019, *The New York Times* reported that the two 737 MAX jets that crashed lacked two safety features that Boeing only sold as "extras" or "optional features." On this news, the Company's share price dropped $10.53 per share, or almost 3%, from a close of $372.70 per share on March 21, 2019, to close at $362.17 per share on March 22, 2019.

Later, on April 29, 2019, Defendant Dennis A. Muilenburg, Boeing's Chairman, President, and Chief Executive Officer, blamed pilots for the Ethiopian Airlines Flight 302 accident, stating that the pilots did not "completely" follow the procedures that Boeing had outlined to prevent the malfunction that likely caused the accident. However, on May 6, 2019, news outlets reported that, in 2017, Boeing was aware of the safety issues that likely caused both accidents. On this news, the Company's share price declined $4.86 per share, from a close of $376.46 per share on May 3, 2019, to close at $371.60 per share on May 6, 2019.

Finally, on May 8, 2019, *Bloomberg Businessweek* reported that Boeing's desire to keep pace with competitor Airbus SE led Boeing to rush the 737 MAX to market. In response to this

news, the Company's share price declined $5.62 per share, from a close of $359.75 per share on May 8, 2019, to close at $354.13 per share on May 9, 2019.

## III.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  In securities class actions proceeding under the PLSRA, consolidation under Rule 42(a) is appropriate where the related actions involve common questions of law or fact. *See* Rule 42(a); *Baron v. Angie's List, Inc.*, Nos. 1:13-cv-2032-WTL-TAB, *et al*., 2014 WL 12755050, at *1 (S.D. Ind. June 16, 2014) (determining that Rule 42(a) "allows actions to be consolidated if they involve a common question of law or fact" (internal quotation marks and citation omitted)).

There are at least two related securities class actions pending in this District on behalf of investors who purchased Boeing securities during the Class Period:

| Case Caption | Date Filed | Claims/Class Period |
|---|---|---|
| *Seeks v. The Boeing Co., et al.*, No. 1:19-cv-02394 | April 9, 2019 | Sections 10(b) and 20(a) of the Exchange Act; January 8, 2019, through March 21, 2019 |
| *Busch v. The Boeing Co., et al.*, No. 1:19-cv-03548 | May 28, 2019 | Sections 10(b) and 20(a) of the Exchange Act; January 8, 2019, through May 8, 2019 |

Here, the Related Actions present nearly identical factual and legal issues arising out of the same alleged course of misconduct by common Defendants and involve the purchase of Boeing securities at artificially inflated prices during overlapping class periods.[3]

**B.  Kegley Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for selecting a Lead Plaintiff in a class action lawsuit asserting claims under the federal securities laws.  15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the court to be appointed as Lead Plaintiff within sixty days of the publication of the notice.  *Id*. § 78u-4(a)(3)(A)(i).  Within sixty days after publication of the notice, any member of the proposed class may apply to the court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action.  *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members.  *See id*. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff,"

---

[3]    The minor variations in the asserted class periods and Defendants named do not render consolidation inappropriate because the Related Actions present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.  *See In re Orion Sec. Litig.*, No. 08 Civ. 1328(RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008) ("slight differences in the facts alleged and legal issues raised do not preclude consolidation").  Indeed, the Court has already granted the motion to reassign the second-filed *Busch* action to this Court as related to the first-filed *Seeks* action.  *See Seeks v. The Boeing Co., et al.,* No. 1:19-cv-02394 (N.D. Ill. June 10, 2019), ECF No. 31.

the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii).

### i.  Kegley Has Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows any member of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed.  *See id.* § 78u-4(a)(3)(A)(i)(II).  Here, in connection with the filing of the *Seeks* Action notice was published on April 9, 2019, by *Business Wire*.  *See* Nirmul Decl., Ex. D.  Thus, June 10, 2019, is the deadline for class members to seek appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B). Accordingly, Kegley timely moves this Court for appointment as Lead Plaintiff on behalf of all members of the class.

### ii.  Kegley has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs courts to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." *Id.* § 78u-4(a)(3)(B)(iii)(I).  Here, Kegley suffered substantial losses of approximately $885,120 under a LIFO analysis in connection with his Class Period transactions in Boeing securities.  *See* Nirmul Decl., Exs. A & B.  To the best of his knowledge, Kegley's financial interest in this matter is the largest of any known Lead Plaintiff

movant. *See* 15 U.S.C. § 78u-4(a)(3)(B); *Groupon*, 2012 WL 3779311, at *5-6 (appointing individual movant with largest losses as lead plaintiff).

### iii.  Kegley Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.  Of these four prerequisites, only a preliminary showing of typicality and adequacy is necessary at this stage of the litigation.  *See Groupon*, 2012 WL 3779311, at *3 (finding burden satisfied upon a preliminary showing of adequacy and typicality).

### 1.  Typicality

The typicality requirement is satisfied if the Lead Plaintiff movant's claims "arise out of the same event or practice or course of conduct that gives rise to the claims of other class members and [its] claims are based on the same legal theory." *Id.* (alterations in original; citation omitted). Kegley satisfies this requirement because, just like all other proposed class members, Kegley purchased or acquired Boeing securities during the Class Period in reliance upon Defendants' false and misleading statements and omissions and suffered damages thereby.  *See id.* (finding that claims "based on the same legal theories and aris[ing] from the same events and course of conduct

giving rise to the claims of the other class members" meet the typicality requirement). Thus, Kegley's claims arise from the same factual predicate and involve substantially the same legal arguments as those of the other class members. Accordingly, Kegley's claims are typical. *See id.*

### 2. Adequacy

"A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Id.* (citation omitted).

Here, Kegley satisfies the adequacy requirement because his interest in vigorously pursuing claims against Defendants—given his substantial financial losses—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements and omissions. There is no potential conflict between Kegley's interests and those of the other members of the class, and Kegley is fully committed to vigorously pursuing the claims on behalf of the class.

Moreover, as set forth in his PSLRA certification, Kegley has affirmed his willingness to prosecute the Related Actions for the benefit of the class. *See* Nirmul Decl., Ex. A. Additionally, as discussed in the Declaration of Robert W. Kegley Sr., as Trustee of the Robert W. Kegley Sr. Revocable Living Trust U/A Dated 04/16/2003, Kegley has demonstrated his familiarity with the facts and claims asserted in the Related Actions, the Lead Plaintiff's responsibilities under the PSLRA, and his commitment to the prosecution of the Related Actions. *See* Nirmul Decl. Ex. C.

Kegley has further demonstrated his adequacy through selection of Kessler Topaz as Lead Counsel for the class. As discussed more fully below, Kessler Topaz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated the

ability to conduct complex securities class action litigation in an efficient, effective, and professional manner.

The evidence submitted by Kegley establishing his commitment to zealously and efficiently represent the interests of the class as Lead Plaintiff is more than sufficient to satisfy the adequacy and typicality requirements here. *See Groupon*, 2012 WL 3779311, at *3 (finding movant adequate and typical where movant's interest did not conflict with the class, movant's losses created substantial interest in the outcome of the case, and movant retained competent and experienced counsel).

### C. Kegley's Selection of Counsel Should be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal*., 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice") (citation omitted); *Groupon*, 2012 WL 3779311, at * 5 (finding that courts "typically do not disturb a lead plaintiff's selection") (citation omitted).

Here, Kegley has selected Kessler Topaz to serve as Lead Counsel and Caffarelli to serve as Liaison Counsel. Kegley's selection of Counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Groupon*, 2012 WL 3779311, at *5-6 (approving lead plaintiff's choice of counsel).

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Nirmul Decl., Ex. E. The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335

10

(PJB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions in this District and across the country, including: *Washtenaw County Employees' Retirement System v. Walgreen Co*., No. 15-cv-3187 (SJC) (N.D. Ill.); *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.); *In re Celgene Corp. Sec. Litig.*, No. 18-cv-4772 (JMV) (D.N.J.); and *Baker v. SeaWorld Entertainment, Inc*., No. 14-cv-2129 (MMA) (S.D. Cal.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Deriv. Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

In addition, Caffarelli maintains an office in the District, has significant experience litigating complex actions, and is well-qualified to represent the class as Liaison Counsel.

Thus, the Court may be assured that, in the event this Motion is granted, the class will receive the highest caliber of legal representation available.

## IV.    CONCLUSION

For the reasons stated herein, Kegley respectfully requests that the Court consolidate the above-captioned Related Actions, appoint Kegley as Lead Plaintiff, approve the selection of Kessler Topaz as Lead Counsel and Caffarelli as Liaison Counsel for the class, and grant such other relief as the Court may deem just and proper.

Dated:  June 10, 2019                                    Respectfully Submitted,

KESSLER TOPAZ
  MELTZER & CHECK, LLP

*/s/ Sharan Nirmul*
Sharan Nirmul
Naumon A. Amjed
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
namjed@ktmc.com
rdegnan@ktmc.com

*Counsel for Robert W. Kegley Sr., as Trustee
of the Robert W. Kegley Sr. Revocable Living
Trust U/A DTD 04/16/2003, and Proposed
Lead Counsel for the Class*

CAFFARELLI & ASSOCIATES LTD.
Alejandro Caffarelli
Madeline K. Engel
224 South Michigan Avenue, Suite 300
Chicago, IL 60604
Telephone: (312) 763-6880
acaffarelli@caffarelli.com
mengel@caffarelli.com

*Proposed Liaison Counsel for the Class*