UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD SEEKS, individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> THE BOEING COMPANY, DENNIS A. MUILENBURG, and GREGORY D. SMITH, <br><br> Defendants | No. 1:19-cv-02394 <br><br><br> **JURY TRIAL DEMANDED** |
| MERCER BUSCH, on behalf of himself and all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> THE BOEING COMPANY, DENNIS A. MUILENBURG, GREGORY D. SMITH, and KEVIN McALLISTER, <br><br> Defendants | No. 1:19-cv-03548 <br><br><br> **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE WANG FAMILY'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD AND LIAISON COUNSEL**

I. **PRELIMINARY STATEMENT**

Kenny K. Wang, his wife Kathleen Wang, and their son Kenny W. Wang ("the Wang Family") respectfully submit this memorandum of law in support of their motion pursuant to the Securities and Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78u-4(a)(3)(B)), for an order: (1) consolidating the above-captioned cases; (2) appointing the Wang Family as Lead Plaintiff pursuant to the PSLRA; (3) approving their selection of Kahn Swick & Foti, LLC as Lead Counsel, and Miller Law LLC as liaison counsel; and (4) granting such other relief as the Court may deem just and proper. *See generally Takara Tr. v. Molex Inc.,* 229 F.R.D. 577, 580 (N.D. Ill. 2005).

As evidenced in Exhibits A and B of the Declaration of Ramzi Abadou in support of the Wang Family's motion (hereinafter, "Abadou Decl."), the Wang Family suffered over $4,700,000 in losses as a result of their purchases of shares of The Boeing Company ("Boeing" or the "Company") common stock between January 8, 2019 and May 8, 2019, inclusive (the "Class Period"). To the best of their knowledge, the Wang Family's loss represents the largest financial interest of any investor seeking to be appointed lead plaintiff. In addition, the Wang Family satisfies the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is therefore the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

II. **PROCEDURAL BACKGROUND**

On April 9, 2019 Plaintiff Richard Seeks filed the first-filed case in this District. 1:19-cv-2394, ECF No. 1 at 27. The same day, a notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead

1

Plaintiff no later than June 10, 2019.[1] *See* Abadou Decl. Exhibit C; 15 U.S.C. § 78u-4(a)(3)(A)(i). On May 28, 2019, Plaintiff Martin Busch filed a related case in this District. *See Busch v. Boeing, et. al.*, 1:19-cv-3548, ECF Nos. 1 & 2. Both allege that Defendants violated Sections 10(b) and 20(a) of the Exchange Act ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5(b) promulgated thereunder.[2] On June 4, 2019, Plaintiff Busch filed a motion to reassign and relate the *Busch* Action to this Court. *See* ECF No. 24. On June 10, 2019, this Court granted Plaintiff Busch's motion to relate. ECF No. 31.

### III. STATEMENT OF FACTS

Boeing is an aerospace firm headquartered in Chicago, Illinois. ¶4.[3] Boeing trades on the New York Stock Exchange ("NYSE") under the ticker symbol "BA." ¶28. Defendant Dennis A. Muilenburg is Boeing's Chairman, President and Chief Executive Officer ("CEO"). ¶29. Defendant Gregory D. Smith is Boeing's Chief Financial Officer ("CFO") and Executive Vice President of Enterprise Performance and Strategy. ¶30. Defendant Kevin McAllister is the President and CEO of the Boeing Commercial Airlines ("BCA") business unit. ¶31. Plaintiff alleges that, during the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's 737 MAX 8 commercial aircraft. *See* ¶¶11-12, 32, 34-39, 44-45.

On October 29, 2018, Lion Air Flight 610 (a Boeing 737 MAX jet), crashed, killing all passengers and crew aboard. ¶11. Following the Lion Air crash, Defendants misrepresented that

---

[1] On April 10, 2019 Seeks issued a correction to the April 9, 2019 press release, clarifying that the first day of the class period was January 8, 2019; not January 8, 2019. *See* Abadou Decl. Exhibit C. The correction did not alter the deadline for movants to file for lead plaintiff. *See id.*

[2] The *Busch* Complaint names one additional individual defendant – Kevin McAllister.

[3] All "¶" and "¶¶" references are to the *Busch* Complaint. ECF No. 1.

"[w]e are confident in the safety of the 737 MAX", and "[a]s our customers and their passengers continue to fly the 737 MAX to hundreds of destinations around the world every day, they have our assurance that the 737 MAX is as safe as any airplane that has ever flown the skies." *Id.*

On January 8, 2019 (the first day of the Class Period), Defendants issued a press release highlighting the "ongoing demand for the 737 MAX." ¶32. This news drove the price of Boeing shares up from $328.11 to $340.53, an increase of $12.42, or about 3.8% that day. ¶33. On January 16, 2019, Boeing boasted that the 737 MAX was "the fastest-selling airplane in Boeing history [and] The MAX builds on the 737's industry-leading performance and reliability …" ¶35. A subsequent press release issued on January 30, 2019 emphasized strong demand for the 737 MAX and touted its "quality and safety improvements…", driving Boeing's share price up from $364.91 to $387.72 that day. ¶36. The Company made similar statements in its 2018 Annual Report on Form 10-K on February 8, 2019, in an industry conference on February 20, 2019, and in a February 27, 2019 press release describing its 737 MAX sales to Vietjet. ¶¶37-38.

On March 10, 2019, Ethiopian Airlines Flight 302 (another 737 MAX jet) crashed, again killing everyone aboard. ¶40. The next day, Ethiopian Airlines and the China Civil Aviation Administration grounded all 737 MAX 8 aircraft. *Id.* On this news, Boeing's shares fell $47.13 during the two trading days ending March 12, 2019. *Id.*

In the weeks following the crash, various media outlets reported that the 737 MAX was flawed and that the U.S. federal authorities had commenced criminal investigations. ¶¶ 41-42. On March 21, 2019 the *New York Times* reported that Boeing had hidden from investors, pilots and passengers the fact that Boeing created two new safety features that it sold as "extras" or "optional features" to keep costs down. ¶43. This news drove the price of Boeing shares down $10.53 on March 22, 2019. *Id.*

3

On April 29, 2019, Defendant Muilenburg misleadingly appeared to blame pilots for the Company's 737 MAX safety lapses, stating that pilots did not "completely" follow procedure in grappling with the Maneuvering Characteristics Augmentation System ("MCAS") software – which was not included in flight manuals provided by the Company to airlines. ¶45. On May 6, 2019, news outlets reported how Boeing admitted that the newly revealed safety alert issues were known to them for over a year before telling the FAA and commercial airlines. ¶46. In response to the news, shares of the Company's common stock fell $4.86. *Id.* On May 8, 2019, the last day of the Class Period, an article by *Bloomberg Businessweek* titled, "Former Boeing Engineers Say Relentless Cost-Cutting Sacrificed Safety," reported that Defendants' intense desire to compete with Airbus led them to rush bringing the 737 MAX to market. ¶47. The next day the Company's share price fell and additional $5.62 per share on unusually heavy trading volume. ¶48.

On May 24, 2019 *Bloomberg* reported that the "U.S. Securities and Exchange Commission is investigating whether Boeing Co. properly disclosed issues tied to the grounded 737 Max jetliner, according to people familiar with the matter, as regulators intensify their scrutiny of the company following two deadly crashes. Officials in the SEC's enforcement division are examining whether Boeing was adequately forthcoming to shareholders about material problems with the plane. . . ." ¶22.

IV. **ARGUMENT**

    A. **THE COURT SHOULD CONSOLIDATE THE ABOVE-CAPTIONED CASES**

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. *See In re Groupon Sec. Litig.*, 2012 U.S. Dist. LEXIS 123899, at *4 (N.D. Ill. 2012). Courts recognize that securities class actions, in particular, are ideally suited to consolidation pursuant to Fed. R. Civ. P. 42(a). *See Hill v. Tribune Co.*, 2005 U.S. Dist. LEXIS

4

23931, *7 (N.D. Ill. 2005) ("Since the cases all concern the same subject matter and essentially the same claims, the motion to consolidate will be granted."). Here, the above-captioned cases (the "Related Actions") are ideally suited for consolidation.

The Related Actions each identify January 8, 2019 as the first day Defendants are alleged to have made a materially false statement or omission. Each involves nearly identical allegations that Defendants made false and misleading statements concerning the Company's business operations during the Class Period. The above-captioned cases also involve common legal issues by asserting claims under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. The Related Actions each name Boeing, Dennis A. Muilenburg and Gregory D. Smith as defendants; the *Busch* Action also names Kevin McAllister as a defendant.

The *Seeks* action asserts a class period ending on March 21, 2019, while the later-filed *Busch* action alleges that the class period ends May 8, 2019. This motion treats the Class Period as ending on May 8, 2019 because it is the most inclusive class period alleged. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009); *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 2008 U.S. Dist. LEXIS 106327, at *27-28 (S.D.N.Y. 2008) ("Courts have held that in circumstances like the one here, the lead plaintiff analysis should utilize the most inclusive class period because it encompasses more potential class members using the longest class period proposed at the lead plaintiff stage . . . .").

Accordingly, this Court should consolidate the Related Actions.

    **B.**    **THE WANG FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF**

        **1.**    **The PSLRA's Procedural Requirements**

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i). First, the plaintiff who files the initial action must, within 20 days

of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice was published notice on *Business Wire* on April 9, 2019, indicating that applications for appointment as Lead Plaintiff must be made no later than June 10, 2019. *See* Abadou Decl. Exhibit C. Within 60 days after publication of the required notice(s), any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. *See* 15 U.S.C. §§ 78u-4(a)(3)(A-B).

Next, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who the "most adequate plaintiff" is, the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> > (aa) has either filed the complaint or made a motion in response to a notice…
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *see Sokolow v. LJM Funds Mgmt.*, 2018 U.S. Dist. LEXIS 107339, at *6 (N.D. Ill. 2018); *Topaz Realty v. Northfield Labs., Inc.*, 2006 U.S. Dist. LEXIS 77613, at *7 (N.D. Ill. 2006). Only by a showing of proof that a lead plaintiff will not fairly and adequately represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the putative class, will this presumption be overcome. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

6

### 2. The Wang Family is the "Most Adequate Plaintiff"

The Wang Family meets the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) by timely filing this motion. Moreover, the Wang Family has sustained a substantial loss from their investment in Boeing securities, and have shown their willingness to represent the class, as demonstrated by the execution of certifications detailing their Boeing transactions during the Class Period. *See* Abadou Decl., Ex. A. In addition, the Wang Family has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed lead counsel, Kahn Swick & Foti, is attached as Exhibit D to the Abadou Declaration. The firm biography of proposed Liaison Counsel Miller Law LLC, is attached as Exhibit E to the Abadou Declaration.

### a. The Wang Family Has the "Largest Financial Interest" in the Relief Sought by the Class

"The PSLRA presumes that the most adequate plaintiff is the plaintiff who—in addition to satisfying other requirements—has the largest financial interest in the relief sought by the class." *Chandler v. Ulta Beauty, Inc.*, 2018 U.S. Dist. LEXIS 107340, at *6-7 (N.D. Ill. 2018); *see also Maiden v. Merge Techs., Inc.,* 2006 U.S. Dist. LEXIS 85635, at *13 (E.D. Wis. 2006) (movant with largest financial interest is "presumptively entitled to lead plaintiff status.").

"While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara*, 229 F.R.D. at 579; *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, *14 (N.D. Ill. 2005) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period."). The Wang Family incurred a substantial loss of over $4,700,000 on their transactions in Boeing securities during the Class Period. *See* Abadou Decl. Exhibit B. To the best of their knowledge, their *Dura*-compliant losses represent the "largest financial interest" in the relief sought by the class.

7

### b. The Wang Family Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest, a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Ulta Beauty,* 2018 U.S. Dist. LEXIS 107340, at *13. Of the four prerequisites, only two—typicality and adequacy—apply at this stage of the proceedings.

Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Id.* ("The typicality and adequacy elements are the relevant factors to the appointment of a lead plaintiff."); *see also Sokolow*, 2018 U.S. Dist. LEXIS 107339, at *20. As detailed below, the Wang Family satisfies both the typicality and adequacy requirements of Rule 23.

Typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied when the representative plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998). However, "the claims of the class representative need not be identical to those of other class members." *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at *11 (N.D. Ill. 2003). Here, the Wang Family is typical because

8

their claims are identical, non-competing and non-conflicting with the claims of the other putative class members. The Wang Family and all the other class members (1) purchased Boeing securities during the Class Period, (2) purchased Boeing securities in reliance upon the allegedly materially false and misleading statements issued by Defendants, and (3) suffered damages by purchasing artificially inflated securities and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Thus, the Wang Family's claims are typical of those of other class members since his claims and the claims of other class members resulted from the same illegal practices.

A proposed lead plaintiff must also "fairly and adequately protect the interests of the class." *Groupon,* 2012 U.S. Dist. LEXIS 123899, at *11. The PSLRA directs courts to limit their inquiry regarding the adequacy of a proposed lead plaintiff to the existence of any conflicts between their interests, on the one hand, and the members of the class, on the other hand. *Id*. The standard for adequacy of representation under Rule 23(a)(4) is met by (1) the absence of potential conflicts between the named plaintiff and the other class members, and (2) the proposed class representative's selection of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, the Wang Family easily meets this requirement. The Wang Family acquired Boeing common stock during the putative Class Period and incurred substantial losses as a result thereof. The Wang Family also has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the financial loss they incurred as a direct result of Defendants' alleged wrongful conduct. *See Ulta Beauty, Inc*., 2018 U.S. Dist. LEXIS 107340, at *14 (given putative lead plaintiff's alleged losses, it had "a substantial interest in the outcome of this case.").

9

Furthermore, as set forth below, the Wang Family has retained competent and experienced counsel to prosecute their claims.[4]

### C. THE COURT SHOULD APPROVE THE WANG FAMILY' SELECTION OF LEAD COUNSEL

The proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Wang Family has selected Kahn Swick & Foti, LLC ("KSF") as Lead Counsel, a firm that has substantial expertise in the prosecution of securities class actions in federal and state courts across the country. *See* Abadou Decl. Exhibit D. As a national law firm with offices in Louisiana, California and New York, KSF is well qualified to serve as Lead Counsel. *See* Abadou Decl. Exhibit D; *see also Kasper v. AAC Holdings, Inc*., 2017 U.S. Dist. LEXIS 109608, at *42-43 (M.D. Tenn. 2017) (appointing KSF as class counsel finding that it satisfied the requirements of Rule 23(g)); *see also In re Orexigen Therapeutics, Inc. Securities Litigation*, No. 15-cv-00540-JLS, slip op. at *6 (S.D. Cal. June 22, 2015) ("The Kahn Swick & Foti firm has extensive experience in the prosecution of securities class actions and it appears that it will adequately represent the interests of all class members.").

KSF also served as counsel to the lead plaintiff in the *Halliburton* securities litigation matter where KSF twice prevailed before the United States Supreme Court and obtained a $100 million recovery. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011). Thus, the Court may be assured that in granting this motion, the class will continue to receive legal representation of the highest caliber.

---

[4] The Wang Family resides in Las Vegas, Nevada.

## V. CONCLUSION

For all of the foregoing reasons, the Wang Family respectfully requests that this Court: (1) consolidate the Related Actions, (2) appoint them to serve as lead plaintiffs in the consolidated action; (3) approve their selection of KSF as Lead Counsel for the putative Class and Miller Law LLC as liaison counsel; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: June 10, 2019

Respectfully submitted,

**The Wang Family**

*/s/ Ramzi Abadou*
Ramzi Abadou
**KAHN SWICK & FOTI, LLP**

912 Cole Street, # 251
San Francisco, CA 94117
Telephone:   504-455-1400
Facsimile:   504-455-1498
ramzi.abadou@ksfcounsel.com

Lewis Kahn
Alexander Burns
Alayne Gobeille
**KAHN SWICK & FOTI, LLC**

1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone:   504-455-1400
Facsimile:   504-455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
alayne.gobeille@ksfcounsel.com

*Proposed Lead Counsel for the Class*

Marvin A. Miller
Andrew Szot
**MILLER LAW LLC**

11

        115 S. LaSalle Street, Suite 2910
        Chicago, IL 60603
        Telephone:    312-332-3400
        Facsimile:     312-676-2676
        mmiller@millerlawllc.com
        aszot@millerlawllc.com

        *Proposed Liaison Counsel for the Class*