**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE THE BOEING COMPANY AIRCRAFT SECURITIES LITIGATION | Case No. 1:19-cv-02394<br><br>The Honorable John J. Tharp, Jr. |

**NOTICE OF RECENT DECISION**

Lead Plaintiff respectfully submits this Notice of Recent Decision regarding the Delaware Court of Chancery's opinion in *In re The Boeing Company Derivative Litigation,* C.A. No. 2019-0907-MTZ (Del. Ch. Ct. Sept. 7, 2021) (the "Derivative Opinion" or "DO"), attached as Exhibit A. As discussed briefly below, the Derivative Opinion provides further support for Plaintiffs' arguments in opposition to Defendants' motion to dismiss the Complaint.

The Derivative Opinion makes clear that the Complaint's allegations in this case are supported by an extensive documentary record. Prior to filing the derivative action, which arises out of the same events at issue here, plaintiffs in that case sought and obtained over 44,000 internal Boeing documents pursuant to Delaware's books and records statute. DO at 3 n.1. The Chancery Court considered the numerous documents that Boeing produced and both parties cited in their motion-to-dismiss briefing, finding that they "support Plaintiffs' allegations," and that "[i]t is reasonable to infer that any exculpatory information not reflected in the document production does not exist." *Id*. While these documents are not currently available to Plaintiffs here as a result of the PSLRA discovery stay, the Derivative Opinion demonstrates that ample evidentiary support for Plaintiffs' well-pled allegations exists, and will be produced in discovery.

The Derivative Opinion also details that, in previously nonpublic written communications between Defendant Muilenburg and Boeing's Board of Directors, Muilenburg stated that he and other senior management employees regularly reviewed MAX safety data at formal meetings, further supporting an inference of scienter. DO at 51 ("[J]ust so you know, Safety data is the first data we look at during our internal ExCo [Executive Council] reviews."). *See In re Kraft Heinz Securities Litigation*, 2021 WL 3566602, at *12 (N.D. Ill. Aug. 11, 2021) (allegations that information was widely shared by senior executives supports an inference of scienter).

The Chancery Court's review of the record further revealed multiple instances where Muilenburg and others at Boeing knowingly and recklessly made misrepresentations regarding the MAX's safety that mirror the misrepresentations they are alleged to have made in this case. *See, e.g.*, DO at 82-83 (Muilenburg "gave lip service to the idea that '[t]he safety of our planes is our top priority,' [but] "his primary focus was the restoration of Boeing's public image."); DO at 33-36 (blaming Lion Air pilots for the crash while ignoring safety issues, and stressing to Defendant Smith the "need to be careful that the [flight manual] doesn't turn into a compliance item that restricts near-term deliveries"); DO at 36 (Muilenburg falsely concealed "that Boeing knew MCAS was vulnerable and susceptible to failure, [and] that pilots were not informed about or trained on MCAS."); DO at 44 (highlighting Boeing's efforts to obstruct the FAA's investigation); DO at 45-46 (after Ethiopian Airlines crash, Muilenburg was not focused on "taking action to address and improve the 737 MAX's safety," but rather "'ongoing production operations,' revenue, and reputational achievement"); DO at 57 (after he was fired, the Board "painted Muilenburg as a money-hungry leader that was willing to prioritize profits over quality and safety"); DO at 56 (Boeing engaged in extensive efforts to deceive the FAA throughout the Class Period such that "with additional scrutiny, regulators learned [in late 2019] the ***extent of Boeing's deceit under***

***Muilenburg's leadership*.**"); DO at 55-56 (detailing public statements by then-Lead Director and current CEO David Calhoun that the MAX was safe and should not be grounded and holding that "Each of Calhoun's representations was knowingly false"); DO at 89-91 (Boeing knowingly made false public statements "about taking specific actions to monitor safety that it did not actually perform.").

The Chancery Court held that "the pleading stage record supports an explicit finding of scienter" against Boeing's Board of Directors. DO at 89-92. The court's finding strongly supports a parallel inference of scienter as to Boeing itself and the Executive Defendants in this case. Among other things, the Chancery Court found, based on internal Boeing documents, that "safety concerns were ***known to management***" both "in the critical period leading up to the Lion Air Crash" (i.e., prior to the Class Period) and afterwards. *Id.* at 87-89.

These "safety concerns" are detailed in Plaintiffs' Complaint here, including (1) formal complaints from employees who questioned the safety of the 737 MAX, including Boeing Senior Manager Ed Pierson (DO at 30-31; Complaint ¶¶160-73); (2) "Boeing's Internal Safety Analysis [that] found that if a pilot took more than ten seconds to identify and respond to the MCAS activation, the result would be catastrophic" (DO at 24-25, 88; Complaint ¶¶101-12); (3) emails showing that MAX Chief Pilot "Forkner made MCAS's vulnerability issues known within the Company" (DO at 26; Complaint ¶¶18, 23, 116-19,148-51); and that (4) after the Lion Air Crash, Boeing began to make revisions to MCAS while continuing to represent publicly that MCAS was safe (DO at 32-33, 88-89; Complaint ¶¶329-30).[1]

[1] The Complaint here identifies additional safety issues known to management that were not pled in the Delaware case, including Boeing's failure to perform numerous mandatory safety analyses, directly contrary to its public statements following the Lion Air Crash. *See* Complaint ¶¶95-122.

In short, the Derivative Opinion considers similar factual and legal issues to those presented in this case, and provides further confirmation that the Complaint here adequately pleads materially false and misleading misrepresentations and omissions, made with scienter, against Boeing and the Executive Defendants. The Derivative Opinion is another in an increasing body of judicial and regulatory findings recognizing the astonishing breadth of Boeing's wrongdoing regarding the 737 MAX. *See, e.g.*, ECF No. 173 (Notice of Supplemental Information regarding $2.5 billion "criminal monetary" penalty for wrongdoing that included "fraudulent and deceptive conduct" and intentional "effort[s] to cover-up deception" in *United States v. The Boeing Co.*, Case No. 4:21-cr-00005-O (N.D. Tex. filed Jan 7, 2021)); ECF No. 171 (Senate Report); *Earl v. The Boeing Co*., No. 4:19-cv-00507-ALM (Mazzant, J), ECF No. 470 (E.D. Tex. Sept. 3, 2021) (certifying class of ticketholders based on sustained allegations that Boeing made material misrepresentations regarding the 737 MAX).[2]

* * *

For these reasons, and those stated in prior submissions, Lead Plaintiff respectfully submits that Defendants' motion to dismiss should be denied.

Dated: September 9, 2021

Respectfully submitted,

*<u>/s/ John C. Browne</u>*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100

---

[2] Although the Chancery Court dismissed the Delaware plaintiffs' claims against the officer defendants, that result was not based on any analysis of factual allegations or evidence. It was based instead on the legal question of demand futility, and, specifically, the requirements a shareholder must satisfy under Delaware law to pursue derivative claims on behalf of the corporation against corporate officers. DO at 100-102. These demand futility issues are not relevant here, and it is crystal clear from the Derivative Opinion that Muilenburg engaged in extensive wrongdoing, including making material misrepresentations with scienter.

Chicago, IL 60601
Telephone: (312) 373-3800
Facsimile: (312) 794-7801
Avi@blbglaw.com

-and-

John C. Browne (admitted pro hac vice)
Katie M. Sinderson (admitted pro hac vice)
Adam D. Hollander (admitted pro hac vice)
Abe Alexander (admitted pro hac vice)
James M. Fee (admitted pro hac vice)
1251 Avenue of the Americas, 44th Floor
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
JohnB@blbglaw.com
KatieM@blbglaw.com
Adam.Hollander@blbglaw.com
Abe.Alexander@blbglaw.com
James.Fee@blbglaw.com

*Lead Counsel for Lead Plaintiff and Lead Counsel for the Class*

KESSLER TOPAZ MELTZER & CHECK LLP
Andrew L. Zivitz (pro hac vice forthcoming)
Joshua A. Materese
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
azivitz@ktmc.com
jmaterese@ktmc.com

*Counsel for Plaintiffs William C. Houser, Bret E. Taggart, and Robert W. Kegley Sr., as Trustee for the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003*