# Exhibit 9

1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
3                            EASTERN DIVISION

4    RICHARD SEEKS, individually and on      )
     behalf of all others similarly          )
5    situated, et al.,                        ) Case No. 19 C 2394
                                              )
6                    Plaintiffs,             )
                                              )
7            vs.                              )
                                              )
8    THE BOEING COMPANY and DENNIS A.         ) Chicago, Illinois
     MUILENBURG,                              ) November 1, 2024
9                                             ) 10:31 A.M.
                     Defendants.             )
10

11           TRANSCRIPT OF PROCEEDINGS - Telephonic Status
          BEFORE THE HONORABLE YOUNG B. KIM, Magistrate Judge

12   APPEARANCES:

13   For the Plaintiffs:        BERNSTEIN LITOWITZ BERGER
                                 & GROSSMAN LLP
14                              1251 Avenue of the Americas
                                44th Floor
15                              New York, New York  10020
                                BY:  MS. KATHERINE M. SINDERSON
16                                   MR. SALVATORE J. GRAZIANO
                                     MR. JOHN J. ESMAY
17
                                KESSLER TOPAZ MELTZER & CHECK, LLP
18                              280 King of Prussia Road
                                Radnor, Pennsylvania  19087
19                              BY:  MR. JOSHUA A. MATERESE

20   For the Defendants:        KIRKLAND & ELLIS LLP
                                333 West Wolf Point Plaza
21                              Chicago, Illinois  60654
                                BY:  MR. JOHN F. HARTMANN
22
                       PAMELA S. WARREN, CSR, RPR
23                   Official Court Reporter - Retired
                        23869 N. High Ridge Drive
24                  Lake Zurich, Illinois   60047
                            312.823.0001
25
     NOTE:  Please notify of correct speaker identification.

2

1    APPEARANCES:   Continued

2                          KIRKLAND & ELLIS LLP
                           1301 Pennsylvania Avenue, N.W.
3                          Washington, DC  20004
                           BY:  MS. KATHERINE KATZ
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings held in open court:)

2        THE CLERK:  19 C 2394, Seeks versus The Boeing

3    Company.

4        THE COURT:  Good morning.  Judge Kim here.  Who is on

5    the line for the plaintiffs?

6        MS. SINDERSON:  Good morning, Judge Kim.  This is

7    Katie Sinderson from Bernstein Litowitz Berger and Grossman.

8        And I'm joined by my colleagues Salvatore Graziano and

9    John Esmay and also Josh Materese from Kessler Topaz for the

10   additional plaintiff.

11       THE COURT:  Okay.  Give me one second to write down

12   these names.

13       For Boeing.

14       MR. HARTMANN:  Good morning, your Honor.  John

15   Hartmann from Kirkland & Ellis for the defendants.

16       And also on the line with me is my partner Katherine

17   Katz from Kirkland & Ellis.

18       THE COURT:  Okay.  Thank you.

19       And for defendant Muilenberg.  Muilenberg?

20       MR. HARTMANN:  Kirkland & Ellis represents him also.

21       THE COURT:  Okay.  Wonderful.

22       I notice two status reports were filed, I think, after

23   I scheduled the status hearing.  And I think the more relevant

24   one essentially lays out that perhaps the parties -- you agree

25   to have plaintiffs, the supplemental request and have

1  defendants respond to the supplemental request by November

2  13th.  Is that right?

3       MS. SINDERSON:  Your Honor, that's my understanding.

4  That is the current state of play.

5       MR. HARTMANN:  We agree.

6       MS. KATZ:  This is Katherine Katz -- yeah.  Yeah.

7       THE COURT:  I'm sorry.  That was Ms. Sinderson, right?

8       MS. SINDERSON:  Initially that was Ms. Sinderson, and

9  then Mr. Hartmann and Mr. Katz -- and Ms. Katz were also

10  agreeing, I believe.

11       THE COURT:  Okay.

12       MS. SINDERSON:  With one slight modification, your

13  Honor, which is that the parties have picked up certain

14  discussions about discovery that had been served last year that

15  were put on hold during the stay.

16       THE COURT:  Yeah.

17       MS. SINDERSON:  And we have managed to crystallize a

18  couple of disputes during that time --

19       THE COURT:  Yes, I understand.

20       MS. SINDERSON:  -- that we (unintelligible) in our

21  status report.

22       THE COURT:  I understand.

23       First of all, I certainly encourage parties to

24  cooperate and agree, to the extent that you can.  But in terms

25  of serving an amended second supplemental request, I think if I

1    remember correctly, and which is my typical practice, is to

2    have a leave of court to do that.

3            Again, it is not a problem.  But I need to be included

4    in that discussion so that I know what's going on.  Parties

5    could have filed a joint motion -- or I should say plaintiffs's

6    unopposed motion to serve amended second set of requests for

7    production and, you know, Judge, here's the deadline, this is

8    what we agreed to.

9            But I'll go ahead and enter an order today requiring

10   the defendants to respond to the amended second set of requests

11   of production by November 13th.  Okay?

12           MS. SINDERSON:  Thank you, your Honor.  I understand.

13           THE COURT:  All right.  So I see that there are two

14   issues.  One issue dealing with the privilege log and the

15   second issue dealing with subpoenas for deposition of certain

16   former employees.

17           Ms. Sinderson --

18           MS. SINDERSON:  That's correct.

19           THE COURT:  -- fair to say?  All right.

20           MS. SINDERSON:  Yes.

21           THE COURT:  And, Ms. Katz, that's accurate?

22           MS. KATZ:  That's correct, your Honor.

23           THE COURT:  All right.  Tell me what the issue is

24   regarding the privilege log, Ms. Sinderson.

25           MS. SINDERSON:  Absolutely, your Honor.  So there

1   is -- there is a few separate issues that are a bit complicated

2   but I will try to summarize them for your Honor.  So initially,

3   as your Honor will recall, discovery in this action was began

4   by defendants reproducing certain documents that they had --

5           THE COURT:  That's right.

6           MS. SINDERSON:  -- previously produced.

7           And we, after -- after receiving those documents,

8   plaintiffs requested from defendants the privilege logs

9   associated with those documents.  There was some back and forth

10  where there was a dispute over whether they would produce those

11  privilege logs, but ultimately they did produce those privilege

12  logs.

13          So we have reviewed those logs closely.  There

14  is -- you know, as you can imagine, they are fairly extensive.

15  There is a number of different privilege claims made on the

16  logs.  But including --

17          THE COURT:  Okay.  Let me stop you for a second.

18          MS. SINDERSON:  Uh-huh.

19          THE COURT:  So this is a log that was prepared for the

20  government agencies?

21          MS. SINDERSON:  Correct.

22          THE COURT:  Okay.  Go on.

23          MS. SINDERSON:  Correct.  And you may recall that the

24  plaintiffs here only received a small subset of the documents

25  that were previously produced.

1      THE COURT:  Yes.

2      MS. SINDERSON:  So it was -- you know, there are some

3  complications in matching up the logs, documents to the

4  documents that were actually produced.  And we have done our

5  best.  And we have been trying to work with defendants to

6  identify, you know, which documents should have been produced

7  and which were not.

8          I think there is a few buckets of issues here.  The

9  first is that there were nearly a thousand documents that were

10  redacted citing privilege under something called Annex 13,

11  which relates to regulatory investigations of these kinds of

12  plane crashes.  As we have discussed with defendants, courts do

13  not hold this to be a valid privilege with respect to court

14  hearings -- court proceedings like this.

15          There is -- defendants have responded that those

16  documents were not withheld pursuant to Annex 13 in their

17  entirety.  But we're sort of at a loss because we really can't

18  get the -- we don't have adequate information to match which

19  documents were withheld as to -- and versus which docs --

20  documents were produced.

21          So we have been seeking from defendants the

22  information necessary to identify those documents, identify

23  what privilege defendants they are actually asserting and

24  exactly what these documents are.

25          The second bucket -- so that's the Annex 13 bucket.

1     The second bucket has to do with entries -- there is

2  thousands of entries on the privilege logs that don't identify

3  the names of the people involved in the communications, the

4  subject matter of the communications, or anything near an

5  adequate description of the material, such that we could

6  identify whether the privilege assertion is correct.

7     They are very vague.  (Unintelligible) was already

8  Lion Air accident or draft public statement, et cetera.  We

9  think that's inadequate, and we would -- we have sought further

10 explanation of the assertions of privilege for each of those

11 entries.  And defendants have rejected that request.

12     Finally, there is just the issue that the Bates

13 numbers on many of these logs don't correspond with the Bates

14 numbers of documents produced.  It appeared to us from our

15 communications with defendants that they are able to match

16 these documents.  But we haven't been able to get that sort of

17 key information so that we can really pin down what the

18 privileges asserted are.

19     And then finally we have identified a number, I think

20 over 10,000 documents, that were redacted but don't appear on

21 defendants's logs at all.  So we have no basis to assess their

22 privilege claims for those documents at all.

23     THE COURT:  Okay.  Ms. Katz, anything you wish --

24     MR. HARTMANN:  Your Honor --

25     THE COURT:  Okay.  Mr. Hartmann.

1          MR. HARTMANN:  -- could I -- could I address the Court

2    on this one?

3          THE COURT:  Well, can you comment on the issues that

4    are existing between the parties?  I just heard

5    Ms. Sinderson's description of the issues.  Is there something

6    that's improper in terms of the description you think?

7          MR. HARTMANN:  I don't think Ms. Sinderson has

8    improperly described the issues they have raised.  But I would

9    like to give the Court some context and explain where we come

10   from on this as we head into, I guess, potential briefing on

11   the dispute.

12         So briefly, by agreement, we have made cloned

13   productions of prior -- prior productions, right?  Essentially

14   all of the documents that were produced to the SEC and to the

15   Delaware derivative litigation plaintiffs.  And then a clone

16   production of documents produced to the Department of Justice,

17   but not all of them.  That production was based on an

18   agreed-upon ESI protocol that the parties arranged or followed

19   following your Honor exceptionally brokering a resolution of

20   those disagreements.

21         By the way, that protocol in draft form -- and it was

22   never finalized the way the parties proceeded -- exempted from

23   these cloned productions its privilege -- I'm sorry -- its

24   provisions regarding privilege logs and redactions.

25         And so we made the cloned productions, and we did not

1  withhold anything from those cloned productions.

2          And then later, although we didn't believe it was

3  required, we actually produced privilege logs that were

4  prepared and submitted in connection with those productions.

5          But it is important to remember a couple of things.

6  Those logs were not and were never meant to be comprehensive

7  because the size and the timing of this -- those productions,

8  the government agencies involved did not insist on

9  comprehensive logs.  In effect -- and I can speak from personal

10 knowledge with respect to the SEC -- they knew and recognized

11 that preparing such logs and requiring them -- requiring them

12 would have -- you know, required an extraordinary amount of

13 time and burden to produce.

14          And so what occurred was that as those productions

15 were made, in some instances, they asked for logs on smaller

16 specific topics or smaller productions.  And, your Honor, even

17 those were quite substantial.

18          So, for example, the logs that we produced have over

19 8,000 entries and amounted to hundreds and hundreds of pages.

20 And in fact because the DOJ production that we made was

21 pursuant to the ESI protocol, and the protocol that the parties

22 agreed upon, and it is a subset of the DOJ production where the

23 logs for the DOJ production don't even cover all of it, that

24 log that we gave the plaintiffs, as a matter of courtesy at

25 their request, doesn't match the production we made here.  And

1    so in that sense it is a bit of a dog's breakfast.

2           But, you know, the plaintiffs are now suggesting that

3    we need to go back over those logs and essentially redo or

4    revisit determinations that were made and never challenged in

5    connection with those productions.  And we think that's

6    inappropriate.  And we think it is -- it wasn't a deal, I guess

7    is the first point.  In fact, if it had been part of the

8    discussion at the time -- and it never was -- we likely would

9    have approached things differently just because of the burden

10   associated with the privilege associated -- privileges

11   associated with those productions and in productions in

12   connection with this case.

13          And our view now is it -- it doesn't need to be

14   revisited and it shouldn't be revisited because that was not

15   part of the agreement and it is really overly burdensome and

16   unnecessary associated with the discovery in this case.

17          You know, a couple of other points.  On the

18   Annex -- excuse me -- Annex 13 documents, my understanding and

19   our understanding -- and I suppose we can scrub this or audit

20   it -- the last time we looked, the vast majority, if not all,

21   of those documents were produced.  In other words, were not

22   ultimately withheld on the grounds of Annex 13.  You know, that

23   I can say on this call and Kate -- Katherine Katz can comment

24   further on that if she wants -- but that's one that I can

25   address on this call.

1      But a wholesale revisiting, your Honor, of the prior

2  logs associated with the prior productions doesn't make sense

3  because it is not part of the deal.  It doesn't even match up

4  to the productions here, and it is -- it is overly burdensome

5  under the circumstances.  That's our view on the privilege

6  issues.

7          THE COURT:  Thank you.

8          All right.  Let me hear, Ms. Sinderson, what are the

9  issues regarding the subpoenas.

10         MS. SINDERSON:  So regarding the subpoenas, your

11 Honor, we had issued last year third-party subpoenas to former

12 Boeing executives.  And I can give you their names or their

13 general --

14         THE COURT:  I have them.

15         MS. SINDERSON:  Yeah, okay.  Great.

16         All four of these individuals left Boeing in the

17 year -- in 2019 following the 737 MAX crashes.  All of them

18 were intimately involved in the investigation and the return to

19 service issue.

20         For example -- you know, according to Judge -- Judge

21 Valderrama's opinion found three were alleged to be part of

22 Boeing's internal investigation team who attended key meetings

23 and kept -- and worked with defendant Muilenberg on the

24 disclosures.

25         We served subpoenas on these former employees because

1    not only were they intimately involved and were likely to have

2    documents in their personal possession, not just their business

3    emails that were relevant here, but they also departed, you

4    know, in those -- that can be often evidence of scienter in a

5    curious case like this.

6        So we have identified communications from their

7    business email showing that they used personal emails.  At

8    least a couple of them we know that they used personal emails

9    in furtherance of business discussions.  And that's consistent

10   with our experience in these kinds of cases that senior

11   executives, there is not always strict lines between their

12   personal communications, their text messages, their personal

13   Gmails, and their business emails.

14       So we served these subpoenas.  We sought relevant

15   communications regarding their departures, regarding the issues

16   in this case.  We agreed with defendants that we didn't need

17   duplication of, you know, if they CC'd themselves, their

18   personal emails because we also already have those documents

19   from Boeing's production.  We don't need that.  We're not

20   seeking duplication.  We're just seeking unique documents from

21   their personal files.

22       One -- so I think that set forth the primary dispute

23   the defendants have refused to search -- our understanding is

24   that they have refused to search these files.  So we don't have

25   an understanding of the volume or anything like that.

14

1           One thing that we had heard from defendants, that if

2      these -- these individuals simply have duplication of their

3      business documents in their private emails, even if we don't

4      know about that, even if we don't have their business email

5      showing that duplication, it is simply duplication that's

6      unimportant and irrelevant to us because we already have the

7      document in the production elsewhere.

8           However, I will -- we will say that we have seen in

9      multiple cases the fact that an individual, an executive

10     forwards to themselves or saves on a flash drive or whatever, a

11     key document in the case, can be highly relevant in

12     understanding what they thought was important and why they were

13     saving that to their personal files for their personal use.

14          So that's really the only argument we have heard in

15     response to why these documents shouldn't be produced because

16     they are duplication or there is -- we already have the key

17     documents.

18          But at this point we're -- you know, we sought to

19     compromise.  We narrowed subject matters.  We narrowed dates.

20     But at this point we would be seeking a full production in

21     response to these subpoenas with the exception that we would be

22     willing to, obviously, accept that they wouldn't produce

23     documents that we already have.

24          THE COURT:  So the subpoenas were ESI from each of the

25     respondents, for their (unintelligible)?

1    MS. SINDERSON:  They would be ESI.  And obviously if
2    they have hard copies, if they printed out hard copies and they
3    have files at home.
4         THE COURT:  Okay.  In terms of the framing of the
5    issue, Mr. Hartmann or Ms. Katz, do you see any errors there?
6         MR. HARTMANN:  Well, I think we have a different
7    perspective on it.  But I don't think Ms. Sinderson was
8    inaccurate in at least how, you know, the issues that they have
9    raised and the arguments that they have made.
10        THE COURT:  Okay.
11        MR. HARTMANN:  If I --
12        MS. KATZ:  Your Honor, the only correction --
13        THE COURT:  Ms. Katz.
14        MS. KATZ:  Apologies.  The only correction I would
15   make to the framing of the issue is just that defendants's
16   position is that at least three of these individuals Mills,
17   Ms. Mills, Ms. Toulouse, and Mr. McAllister, you know, never
18   used their personal email for business purposes.  We did not
19   confirm that they ever did.  So to the extent (unintelligible)
20   that they are going after their personal email files, I think
21   that's just an improper fishing expedition.
22        THE COURT:  Okay.  All right.
23        MR. HARTMANN:  Yes, your Honor.  Your Honor, it is
24   John Hartmann again.  Can I just address this briefly also?
25        THE COURT:  Sure.

16

1          MR. HARTMANN:  So they have subpoenaed four former

2    Boeing officers, including the former chief legal officer and

3    general counsel of the company, for materials in their personal

4    possession.  And the subpoenas seek both Boeing materials and

5    Boeing Company and business materials, as well as personal

6    files and emails.

7          And our view is that to the extent that they seek

8    Boeing materials and to the extent that these former employees

9    even have such materials -- and Ms. Katz has

10   already -- Ms. Katz has already commented on that -- they are

11   duplicative because those are materials that they can and will

12   get from Boeing.

13         And to the extent that these subpoenas seek personal

14   files and emails, you know, personal emails, personal things,

15   communications that they have, they are inclusive, they are

16   burdensome, and unnecessary and go beyond what's necessary or

17   proportional for the needs of the case.  And particularly with

18   respect to personal, personal communications, they amount to a

19   fishing expedition.  You know, not of company files, but of

20   personal stuff.

21         And needless to say, that the subpoena to judge --

22   former Judge Mike Luttig, the chief legal officer of the

23   company, that adds additional privilege complications to the

24   already -- to the inclusion and to the burden.

25         And we have met and conferred in good faith on these

1    subpoenas but the discussions didn't lead to a reasonable
2    compromise.  And if anything, honestly, reasonably, we think
3    they have gone backwards.

4           And so, you know, their position is they get all this
5    stuff.  And our position is that it really truly is -- is
6    something that's inappropriate in this case given all of the
7    discovery that they are already getting and will get from the
8    company.  And it amounts to an improper burden and intrusion
9    into the personal communications of these particular
10   individuals.

11          I'll stop there.

12          THE COURT:  Okay.  Thank you.

13          Let me give you some guidance, if you will.  These
14   aren't rulings, because there's nothing before me.  Parties
15   have simply described that there are certain issues that need
16   to be litigated in their status report.  So I don't have any
17   authority to rule on anything just yet.  But I think I can
18   provide some guidance for the parties's benefit and for their
19   consideration.

20          In terms of the privilege log issue, when I saw that
21   issue, I was a little -- I was taken aback a little bit only
22   because to the extent of discovery here, and written discovery,
23   it was simply the production of cloned documents, not
24   necessarily the response to requests for production of
25   documents.  Obviously a privilege log is required under Rule

18

1   26(b)(5) if -- if defendants are withholding responsive

2   documents to a discovery request.

3        So we have a very unique situation here where

4   defendants have simply provided documents produced and other

5   investigations and action.  This may be a little bit more

6   crystallized in terms of the Delaware action.  In other words,

7   if defendants produced a privilege log withholding responsive

8   documents through discovery requests served in the Delaware

9   action, maybe there is something there that I can address.

10        But in connection with the DOJ and SEC investigations,

11   I highly doubt that I am going to be able to address the

12   privilege issue in any meaningful way because I'm going to be

13   looking to Rule 26(b)(5), I need to look at discovery requests

14   to see whether responsive documents are being improperly

15   withheld.

16        So I guess that's a long way of saying it may -- the

17   privilege log issue may not be ripe for this Court's

18   intervention.  Perhaps once the second -- the amended second

19   request for production of documents generates a privilege log,

20   perhaps at that point that the Court is in a better position to

21   weigh in.

22        That's my comments regarding the privilege log.

23        With respect to the subpoenas for ESI and other

24   documents, I think that Ms. Sinderson has a very good point.

25   Again, I'm just simply giving you my thoughts.  Ms. Sinderson

1   has a very good point that if individuals, high-ranking

2   officers are forwarding business communication to their

3   personal email address, that is significant.  Why would

4   somebody make that determination or take that action, right, to

5   forward a business communication to a personal email address or

6   whatever the case may be?

7          As a Judge, I have a business account and I have a

8   personal account.  I can't remember the last time I forwarded a

9   business communication to my Gmail account.  Why would I?  The

10  point of emails is to simply communicate.

11         Now if I wanted to save something in my personal

12  account, then I would.  But I don't have a need to do that.

13  Everything I do is public.

14         So the fact that these high-ranking officers forwarded

15  select communications to their personal account, that could be

16  significant.  I mean, I certainly -- when I ask these officers

17  why, why did you even bother doing that, what's the purpose of

18  sending a business communication to personal email address.

19         The other thing that I can share with you is suppose

20  these officers are current officers.  I think it is an

21  obligation on the part of the defendant Boeing to collect

22  sources of information, whether they are business devices or

23  personal devices.  I guess it really comes down to the policy

24  that Boeing had with respect to electronic communications and

25  use of personal devices for business reasons.

20

1          And I think you said, Mr. Hartmann, you know, personal

2     emails or personal text messages about this case are highly

3     intrusive.  You know, I have seen many emails and text messages

4     from personal devices that are more illuminating about a case

5     than business communications.  Individuals tend to be a little

6     more loose lipped perhaps or a little more blunt in their

7     personal communications.  So I'm not sure that that's a good

8     defense to a subpoena for records from individuals.

9          Again, these are simply thoughts.  And I should remind

10    the parties that these subpoenas are served on the individual

11    witnesses, not on the defendants.

12         So I think Rule 45 would govern whatever motion is

13    filed by the plaintiffs.

14         So I'm going to leave it there.  Once I see more

15    specifics, I will get into these issues and rule on them as I

16    need to.

17         To the extent that the parties have an impasse, the

18    parties have reached an impasse on the privilege log issue, as

19    well as the subpoena issue, I'm going to require the plaintiffs

20    to go ahead and file motions to compel on November 15th.

21         Again, you know, the fact that you are filing a motion

22    to compel shows that the privilege log has to be something in

23    connection with a discovery request that was served in this

24    case.  So it presents a problem, in my opinion, for plaintiffs

25    to say that the privilege log is inadequate, doesn't meet Rule

1   26(b)(5). How do I go about assessing that, right?

2           In any event, I'll leave it to you, Ms. Sinderson, how

3   you wish to proceed.

4           But by November 15th I would like plaintiffs to go

5   ahead and file whatever discovery motions that they need to

6   file regarding the privilege log, as well as the third-party

7   subpoenas.

8           If the motions are timely filed -- and I'm going to

9   require defendants -- well, I should say depending on what

10  motions are filed, defendants or subpoena respondents to file a

11  response by December 6th.

12          Then I'd like to set a status and motion hearing so

13  that I don't lose track of this case.

14          Give me one second. I'm looking through my calendar.

15      (Brief interruption.)

16          THE COURT: If the parties in the 11:00 o'clock case

17  have joined us, please standby.

18          Can you take a look at your calendar for December 18

19  at 1:00 P.M.

20          Ms. Sinderson?

21          MS. SINDERSON: I'm looking right now at 1:00 P.M.

22  Yes, that works for me, your Honor.

23          THE COURT: Mr. Hartmann?

24          MR. HARTMANN: I'm almost there. Yes, your Honor,

25  that -- we can cover that, yes.

1      THE COURT:  I'm sorry, did I give you -- what date did
2  I just give you?  December --
3      MS. SINDERSON:  December 18th at 1:00 P.M.
4      THE COURT:  Oh, that's right.  I'm sorry.  December
5  18th, 1:00 P.M.
6      Okay.  So, again, if timely motions are filed,
7  response filed thereto, we will have a motion hearing on
8  December 18 at 1:00 P.M.
9      I would like the parties to allow at least two hours
10  for the motion hearing.  The motion hearing will take place in
11  courtroom 1019.  I will put this all in my order.  You don't
12  have to write anything down.
13      And if I think that I can rule on the motion before
14  the 18th, or if I think that the issues are limited enough that
15  we don't need an in-person hearing, I will certainly let the
16  parties know in advance, you know, so that you have sufficient
17  time to make arrangements not to travel.
18      Any questions, Ms. Sinderson?
19      MS. SINDERSON:  No questions, your Honor.  I
20  appreciate it.  Thank you.
21      THE COURT:  Mr. Hartmann?
22      MR. HARTMANN:  No, your Honor.  Thank you.
23      THE COURT:  All right.  Thank you then.  Take care.
24  Bye-bye.
25      MR. HARTMANN:  Bye-bye.

1          (Which concluded the proceedings.)

2                          CERTIFICATE

3          I certify that the foregoing is a correct transcript

4    from the digital recording of proceedings in the above-entitled

5    matter to the best of my ability, given the limitation of using

6    a digital-recording system.

7

8

9    */s/Pamela S. Warren*                    November 1, 2024
     Official Court Reporter - Retired                  Date
10   United States District Court
     Northern District of Illinois
11   Eastern Division

12

13

14

15

16

17

18

19

20

21

22

23

24

25