**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE THE BOEING COMPANY AIRCRAFT SECURITIES LITIGATION | ) ) ) ) ) ) ) ) | No. 19 CV 2394<br><br>Magistrate Judge Young B. Kim<br><br>February 17, 2026 |

**MEMORANDUM OPINION and ORDER**

Plaintiffs filed a putative class action on behalf of the shareholders of Boeing Company ("Boeing") for securities fraud under Section 10(b) of the Securities Exchange Act. Before the court is Plaintiffs' motion to compel Defendants to produce an amended privilege log with more detailed document descriptions and certain categories of documents Defendants improperly withheld. (R. 443, Pls.' Mot. Compel ("Motion" or "Mot.").) Defendants oppose the Motion. (R. 454, Defs.' Opp'n ("Opposition" or "Opp.").) For the following reasons, the Motion is granted only to the extent that Defendants are ordered to further amend their most recent privilege log in accordance with the following rulings:

**Background**

Plaintiffs argue that Defendants' privilege log is deficient and Defendants improperly withheld documents based on spurious privilege claims. This matter involves securities fraud claims against Boeing, its former President and CEO Dennis Muilenburg, and former CFO Gregory Smith. Plaintiffs allege that during the first part of 2019, Defendants knowingly misstated and concealed information about

safety problems with Boeing's 737 MAX after the Lion Air Flight 610 crash in October 2018 and the Ethiopian Airlines Flight 302 crash in March 2019, artificially inflating Boeing's financial prospects and stock price.

During written discovery, the court ordered Defendants to complete their document production and serve their privilege log by May 1, 2025. (See R. 400, March 6, 2025 Order.) Defendants timely produced their first privilege log, which spanned over 14,000 entries and 420 pages. (Mot. at 3.) Plaintiffs complain about the number of documents withheld, (id.), but Defendants point out that they produced over 500,000 documents, (Opp. at 1-2).

On June 11, 2025, Defendants served on Plaintiffs an amended privilege log that reduced the total number of entries to 11,663 and produced more than 2,800 documents they previously redacted or withheld as privileged. (Mot. at 3.) Less than two weeks later, on June 24, 2025, Defendants produced a second amended privilege log (the "Log") that includes 11,765 entries—102 more entries than the amended log. (Id.). Three days later, Plaintiffs filed the instant motion.

After Plaintiffs filed the motion but one day before Defendants filed the Opposition, Defendants served on Plaintiffs a third amended log on July 15, 2025. (Opp. at 9 n.2, 13 n.3, 14 n.4.) This most recent log has the same number of entries as the Log but includes updated descriptions for at least seven entries and additional information, including senders, recipients, and privilege codes for about 400 entries that Defendants say was "inadvertently omitted" from the Log. However, because Plaintiffs relied on the Log and cited to it when filing their motion, this court focuses

on the Log and not the most recent version.  Defendants may further amend or keep the entries as they are in the more recent version based on the rulings included herein.

## Preliminary Issues

For the sake of clarification and transparency, the court addresses confidential designations and exhibits submitted for *in camera* review at the outset.

### A.    Confidential Designation

The court first addresses Defendants' confidentiality designation for the Log. When moving to compel, Plaintiffs initially filed a redacted version of the Motion, (R. 441), attaching Exhibits C, I, and J, which consist of publicly available documents, along with an unredacted version of the Motion, (R. 443), and Exhibits B, E, and G, under seal.  Exhibits B, E, and G include emails the attorneys of record exchanged regarding issues surrounding Defendants' privilege logs. Plaintiffs filed the unredacted version of the Motion and Exhibits B, E, and G under seal because Defendants designated their privilege logs as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  (R. 441, Exs. D, F, H (submitted for *in camera* review); see also R. 444, Pls.' Mot. to File Under Seal.)  Consistent with their practice, the Log is also marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." (R. 454, Ex. 2 (submitted for *in camera* review).)

This court finds this designation at odds with Rule 26(b)(5) and the Agreed Confidentiality Order it entered in January 2023.  (R. 240.)  Given the strong preference for transparency and public access to court records, especially in a putative

class action case that may concern members of the public not yet involved in the litigation, this court avoids sealing documents on the public docket or concealing information it considers when ruling on disputes whenever possible.

Rule 26(b)(5) provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . expressly make the claim[] and . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The objective of preparing and producing a privilege log is to share information that is not confidential or privileged—certainly not information that only attorneys can access.

Furthermore, under Paragraphs 2 and 3 of the Agreed Confidentiality Order, "Highly Confidential Information" is "Confidential Material . . . that is of such a private, sensitive, competitive, or proprietary nature that disclosure of such material is likely to cause serious economic harm or competitive disadvantage to the producing party such that protecting the information cannot be avoided by less restrictive means than by designation as Highly Confidential." (R. 240, Agreed Confidentiality Order at 2.) While the underlying communications themselves may be confidential, the Log's descriptions of these communications are not. It is not a secret that Defendants have been sued for their statements regarding "issues related to MCAS" and Boeing 737 MAX planes. As such, disclosing that Defendants sent and responded to, for example, "email[s] requesting legal advice regarding draft Board report

4

concerning RTS status" in the wake of Lion Air and Ethiopian Airlines 737 MAX crashes killing all passengers and crew members is not likely to cause serious economic harm or competitive disadvantage to Defendants.

Also, to the extent that the public disclosure of brief email descriptions harms Defendants, like where Boeing's in-house counsel received and sent requests for legal advice about company statements regarding the 737 MAX crashes, that ship has sailed. Indeed, those statements are the subject of this public litigation, and it should surprise no one that a sophisticated aircraft manufacturer would consult its attorneys before making public statements about its planes crashing, killing hundreds of people. Moreover, those crashes and corresponding statements about them have been the subject of such overwhelming global interest and scrutiny that a Google search reveals troves of Wikipedia pages, business school case studies, and thousands of news articles about the same information Defendants suggest is "Highly Confidential" here. While the court is not requiring Defendants to file the Log on the docket, they cannot treat it as something it is not.

## B. *In Camera* Review

The court next comments on the parties' submission of some of their exhibits for *in camera* review. Generally, litigants should not submit exhibits they rely on for *in camera* review when seeking or opposing relief because they should be accessible on the public docket. If *in camera* submission is necessary because of the sensitive nature of the information, litigants should seek the court's permission and explain why *in camera* submission is needed. Here, Plaintiffs emailed various privilege logs

and challenges thereto for this court's review without filing them on the docket. In light of the court's ruling requiring Defendants to further amend the Log, Plaintiffs are not required to file these exhibits on the docket, but the parties must be mindful of the court's obligation to maintain transparency.

As for reviewing the documents underlying the Log, this court declines to do so. Plaintiffs note that the court may be "inclined to review a sampling of the purportedly privileged documents *in camera*," and express their willingness to work with Defendants to create a sampling of such documents. (Mot. at 15.) It is true that *in camera* review of withheld documents is "a highly appropriate and useful means of dealing with" privilege issues, *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 406 (1976), and such procedure is within the court's discretion, *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4745385, at *5 (N.D. Ill. Oct. 12, 2021), *objections overruled*, 2022 WL 1642311 (N.D. Ill. March 30, 2022). But courts may also order revisions to a privilege log without reviewing each disputed document. *See United States ex rel. McGee v. IBM Corp.*, No. 11 CV 3482, 2017 WL 1232616, at *3-4 (N.D. Ill. April 4, 2017).

Because the party withholding responsive discovery bears the burden of establishing that a privilege protects it on a document-by-document basis, *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020), this court prefers to assess each disputed document *in camera* where the documents withheld are of a "manageable quantity," *see Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 880 (7th Cir. 2005). Doing

so better ensures the "parties' competing interest[s]" are balanced efficiently. *Id.*; *see also In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001) ("[D]istrict courts should be highly reluctant to order disclosure without conducting an *in camera* review of allegedly privileged materials.").

However, the court lacks the resources to review the nearly 10,000 disputed documents in this case. The solution Plaintiffs propose—a sampling of documents—can be used where the sampling procedure is not so arbitrary that it risks inaccuracy or unfairness. *See Am. Nat'l*, 406 F.3d at 878-80. Courts, including this one, have used samplings to assess disputes. *See, e.g., Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 3624084, at *1-2 (N.D. Ill. Aug. 23, 2017). But the court declines to do so here because ordering the production of thousands of documents after reviewing only a sample may lead to unfairness.

Instead, the court orders Defendants to produce an amended privilege log. The court provides several examples of Log entries that are sufficiently descriptive and those that are not. For the entries that are sufficient, Defendants need not amend the Log. Where Defendants maintain their privilege claims over documents, they must produce an amended privilege log that complies with and addresses the types of concerns raised in this opinion. Where Defendants determine upon further review that documents are not privileged, Defendants must produce those documents or redact them. Defendants must recognize that the inadequacies identified are examples and not necessarily exhaustive. After Defendants amend the Log and/or produce additional documents, Plaintiffs may file a second motion to compel if they

remain concerned about the sufficiency of the privilege log, identifying the disputed line numbers for this court's review. The court will then review those entries and order production of documents for which descriptions are indeed inadequate.[1]

## Analysis

Turning to the merits of the Motion, the court agrees with Plaintiffs that Defendants need to amend the Log but disagrees that Defendants must produce certain categories of withheld documents at this time. The Log spans 360 pages and includes 11,765 entries—with about 7,700 of the documents identified being withheld in their entirety, and the rest having been produced to Plaintiffs with redactions. (Mot., Ex. D (submitted for *in camera* review).) Plaintiffs argue that Defendants' "vague and generic descriptions" in more than 9.000 entries are insufficient to establish any privilege or immunity under Rule 26(b)(5). (Mot. at 5.) Plaintiffs also object to six categories of documents they believe are being impermissibly withheld or redacted under the work-product doctrine or the attorney-client privilege.

The work-product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative." Fed. R. Civ. P. 26(b)(3)(A). This protection applies to documents that "can fairly be said to have been prepared or obtained because of the prospect of litigation," *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir.

---

[1] If Defendants insist on designating the amended privilege log this court orders here as "Confidential" or "Highly Confidential," and Plaintiffs remain concerned about the adequacy of the log entries, Plaintiffs are urged to file a motion to de-designate the privilege log at the same time they file their second motion to compel so that the court may timely address the designation issue.

1983), not to documents developed in the ordinary course of business where there is a remote prospect of litigation, *see Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010); *Binks*, 709 F.2d at 1119 ("While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation."). Moreover, a document prepared for non-litigation purposes receives no work-product protection, even if it reflects legal thinking. *See Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 899 (N.D. Ill. 2018).

The attorney-client privilege prohibits the compelled disclosure of "confidential communications between a client and an attorney for the purpose of obtaining legal advice." *Denius v. Dunlap*, 209 F. 3d 944, 952 (7th Cir. 2000). This privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)). As such, only where the communications "constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence" does the privilege attach. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 216 (N.D. Ill. 2013) (quoting *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)).

When a party withholds otherwise discoverable information as privileged, it must "describe the nature of the documents, communications, or tangible things not

produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5); *see also Sandra T.E.*, 600 F.3d at 623. This is typically done using a privilege log. An adequate privilege log "identif[ies] for *each* separate document . . . the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *RBS Citizens*, 291 F.R.D. at 218 (emphasis in original) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii). Failure to produce an adequate privilege log can result in a waiver of the privilege. *United States ex rel. McGee*, No. 11 CV 3482, 2017 WL 1232616, at *4 (N.D. Ill. April 4, 2017).

Finding that a party failed to comply with Rule 26 can be simple. For example, a privilege log is inadequate where the entries do not include basic information like the names of the authors or recipients of the documents, *see Motorola Sols., Inc. v. Hytera Commc'ns Corp*, No. 17 CV 1973, 2018 WL 1281393, at *1 (N.D. Ill. Jan. 10, 2018), or the dates of correspondence, *see Urb. 8 Fox Lake Corp.*, 334 F.R.D. at 156. Here, several entries in the Log are missing this basic information, as Defendants appear to have withheld parent-level non-draft communications, but omit the names of authors or recipients in subsequent communications included in the Log. Defendants must identify this information in their amended log.[2]

---

[2] These entries include at least Line Nos. 9, 11, 217, 648, 2,457, 2,470, 2,476, 2,477, 2,479, 2,480, 2,485, 5,415, 5,492, 5,496, 5,540, 5,541, 5,572, 5,573, 5,594, 5,602, 5,672, 5,724, 5,749, 5,750, 5,864, 5,868, 6,202, 6,242, 7,388, 7,389, 7,451, 7,598, 7,602, 7,605,

In other cases, such as when an entry's description suggests the withheld document reflects both business and legal communications, assessing compliance with Rule 26 is more difficult. That said, as the party withholding documents, Defendants bear the burden of establishing privilege on a document-by-document basis. *Id.* (citing *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011)). Further, the court must construe Defendants' assertions of evidentiary privileges narrowly because they operate in "derogation of the search for the truth and run counter to the public's right to every person's evidence." *Id.* (citing *Swidler & Berlin v. United States*, 524 U.S. 399, 411 (1998)). As such, Defendants are reminded that the legal weight is balanced in favor of production.

## A.     Boilerplate Descriptions

Defendants' use of boilerplate descriptions renders the Log deficient. There is nothing inherently wrong with using repetitive descriptions because the same descriptions may apply to many privileged documents. While Rule 26(b)(5) does not require each description to be unique, the descriptions Defendants use must be sufficiently detailed for Plaintiffs and the court to assess the nature of the privilege being asserted and whether it applies. Indeed, to satisfy the requirements of Rule 26(b)(5)(A), a privilege log must "at least describe the subject matter to which the legal advice was directed." *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15 CV 3187, 2020 WL 3977944, at *3 (N.D. Ill. July 14, 2020). Because specificity allows

---

8,705, 8,821, 8,832, 9,042, 9,045, 9,047, 9,048, 9,049, 9,051, 9,053, 9,062, 9,209, 10,698, 11,112, 11,114, 11,119, 11,120, 11,121, 11,122, 11,123, 11,124, 11,126, and 11,127.

other parties and the court to evaluate whether the proponents of a privilege have met their burden of establishing its applicability, conclusory language is neither useful nor adequate. Log entries that simply restate the author and recipients and include only buzzwords like "confidential communication," "legal advice and strategy," or other conclusory language are insufficient. *See Motorola Sols.*, 2018 WL 1281393, at *1 (noting that describing documents only as "reflecting legal advice or opinions from in-house counsel" is "impermissibly vague"). The entries instead must describe the specific subject matter of the legal advice. *Washtenaw Cnty.*, 2020 WL 3977944, at *3 ("[D]escriptions that at least describe the subject matter to which the legal advice was directed come closer to being sufficient, and in many cases will be sufficient."). This approach balances the interests of both parties—the withholding party maintains its privilege, while the requesting party receives sufficient information to verify that the assertion of privilege is well-grounded.

Fashioning privilege log descriptions with enough detail to support an assertion while not revealing the underlying advice or work product can be tricky. *Id.* ("Distinguishing business communications from legal communications may in fact be difficult, but so is the task of describing the basis for the privilege with sufficient detail yet without disclosing what the legal advice actually was."). But that is what Rule 26(b)(5)(A) requires. Compare two entries from another case. One entry that describes a withheld document as a "[d]raft pleading relative to pending lawsuit from outside counsel re: the purpose of conveying legal advice and strategy," was sufficiently detailed because it described the form (draft pleading), the substantive

purpose (conveying legal advice and strategy), and the basis for privilege (attorney-client). *See St. Paul Guardian Ins. Co.*, 2021 WL 4745385, at *6. By contrast, another entry that described an "[e]mail re: Confidential communication involving in-house counsel for the purpose of rendering legal advice regarding coverage," was not. *Id.* at *8. And an entry describing an "[e]mail re: discussion of legal advice and strategy" was likewise insufficient because it gave the reader almost no information to explain why the privilege attached. *Id.*

Plaintiffs point to descriptions where the topic included was repeated hundreds of times in the Log, suggesting that repetition renders those descriptions inadequate because they are impermissibly vague or demonstrate a failure to review each document for privilege. (Mot. at 6.) Defendants counter that each description, even if repeated many times, adequately describes the individual document at issue and that repetition is inevitable given the issues and number of documents in question. (Opp. at 3-4.) The court does not doubt there are voluminous emails between Defendants and their lawyers on a handful of topics. As noted, it is not inherently problematic for parts of descriptions—so long as they are accurate—to be repeated in the privilege log. For the 11,765 entries in the Log, there are about 728 unique descriptions. Plaintiffs point to relatively short, recurring phrases and complain that they "improperly place most of the documents" into these "boilerplate categories." (Mot. at 6.)

For example, Plaintiffs point to the phrase "[i]ssues related to the Maneuvering Characteristics Augmentation System" or "MCAS," which is repeated over 1,450

13

times in the Log. (Id.) Although there are dozens of unique descriptions including MCAS as the main subject (e.g., Entry Nos. 2,912 ("Email requesting legal advice regarding issues related to [MCAS]."), 11,682 ("Draft memorandum providing information to assist in rendering legal advice regarding issues related to [MCAS]."), 11,710 ("Draft presentation containing legal advice regarding issues related to [MCAS].")), the entries remain too general because they fail to describe the "issues" relating to MCAS or establish that the withheld documents reflect confidential legal advice, not business matters. Including even a small amount of detail would allow Plaintiffs and the court to better assess the privilege assertions. To be clear, the court does not doubt that the topic of MCAS generated thousands of privileged documents, but Rule 26(b)(5) simply requires more specificity.

Plaintiffs also complain that the description "[d]raft update on RTS progress" was used for more than 1,000 entries. (Mot. at 6.) As with the MCAS entries, this description must be more detailed. There are hundreds of entries described as "[e]mail providing [or requesting] legal advice regarding draft update on RTS progress," but this description fails to offer any level of comfort that the documents are indeed privileged. (Id.) Likewise, the use of the description "[l]egal advice regarding Lion Air Flight 610" and "Ethiopian Airline Flight 302" in more than 425 Log entries does not shed light on the legal advice implicated. (Id.) Again, Rule 26(b)(5) seeks specificity so that the requesting party may be assured that the privilege protects the identified document from production. Additional details on

aspects of the RTS progress implicated and issues related to the crashes must be included in the amended log.

That said, the court does not agree with Plaintiffs' other challenges. For example, they complain that more than 325 documents are described as providing or requesting legal advice on "[d]raft company statement[s] concerning Lion Air Flight 610" and "Ethiopian Airline Flight 302" crashes. (Id.) But this small detail—that the documents reveal legal advice sought or provided about the company's statements regarding the crashes—pushes them just over the line of sufficiency.

Plaintiffs also complain about descriptions used to identify documents concerning the FAA, which cover about 2,100 entries. (Id.) But a review of these descriptions reveals they are more individualized than Plaintiffs suggest and, therefore, sufficient. For example, Entry Nos. 656 ("Email requesting legal advice regarding communications with FAA concerning MCAS"), 680 ("Email providing information to assist in rendering legal advice regarding communications with FAA concerning AOA"), and 4,448 ("Email providing legal advice regarding communications with FAA concerning training requirements"), all indicate that the documents include the provision of legal advice, requests for legal advice, or information to assist the rendering of legal advice related to Defendants' communications with the FAA on specific topics like MCAS, AOA, or training requirements.

That these withheld documents relate to communications with the FAA does not diminish the adequacy of Defendants' descriptions. There is no dispute that

15

Defendants had ongoing discussions with the FAA about the 737 MAX crashes. Given the potential for liability and other legal consequences following the crashes, it is unsurprising that Defendants consulted their attorneys about communications with the FAA. The same is true for the 650 entries describing internal communications Defendants had with attorneys regarding their discussions with the European Union Aviation Safety Agency concerning "MCAS," "RTS status," "AOA," or "stabilizer trim functions." (Mot. at 6.)

So too are the 1,200 entries describing legal advice and work product related to "draft company statement[s]" regarding "MCAS," "RTS status," "AOA," or "stabilizer trim functions" Defendants' attorneys generated. (Id.) Plaintiffs group broad swaths of entries together, but the individual entries include sufficient information for the court to assess the privilege claims (e.g., Entry No. 536 ("Email containing legal advice regarding draft company statement concerning stabilizer trim functions."), 706 ("Email providing information to assist in rendering legal advice regarding draft company statement concerning AOA."), 4,137 ("Email containing legal advice regarding draft company statement concerning MCAS.").

The remaining phrases Plaintiffs challenge are also sufficiently descriptive. When reviewed on an individualized basis, the 325 entries described as "[r]esponses to inquiries from media regarding 737 MAX" and the 325 entries described as "AOA guidance for various flight conditions," (Mot. at 6), provide enough details to be adequate (e.g., Entry No. 730 ("Draft meeting minutes providing information to assist in rendering legal advice regarding AOA guidance for various flight conditions."),

1,213 ("Memorandum providing information to assist in rendering legal advice regarding AOA guidance for various flight conditions."), 1,259 ("Email requesting legal advice regarding AOA guidance for various flight conditions."), 2,271 ("Email containing legal advice regarding response to inquiries from media regarding 737 MAX."), 5,758 ("Draft memorandum providing information to assist in rendering legal advice regarding response to inquiries from media regarding 737 MAX."), 5,802 ("Email containing a request for legal advice regarding response to inquiries from media regarding 737 MAX.").)

The adequacy of these descriptions also plays a role when assessing subcategories of documents at issue in the Motion. For example, Plaintiffs raise two issues with Entry No. 906, which describes a withheld communication as an "[e]mail requesting information to assist in rendering legal advice regarding communications with FAA concerning MCAS." Plaintiffs challenge the sufficiency of the description and the fact that no lawyers were included in the communication. The court finds the description to be adequate because it offers the basis for the privilege, the form of the communication, and the privileged information reflected therein.

However, even ostensibly adequate descriptions may need to be amended based on other factors discussed herein. For example, Plaintiffs challenge Entry No. 9,285, an "[e]mail prepared in anticipation of litigation regarding draft company statement concerning RTS status," as insufficiently descriptive and because the presence of a third-party on the communication breaks privilege. While the court

17

finds this entry's description, by itself, to be adequate, this entry still must be amended for the reasons described herein.

## B. Business Records

The court turns next to the specific categories of withheld documents about which Plaintiffs object. Plaintiffs first complain that Defendants withheld in full—instead of producing redacted versions—scores of communications and attachments to emails. (Mot. at 9-10.) At its core, Plaintiffs' argument is that the withheld documents are, at best, business records reflecting some legal advice. (Id.) First, Plaintiffs point to the number of documents withheld—about 3,600 communications and 3,900 attachments. (Id.) Defendants counter that their "document-by-document" approach to withholding was targeted and appropriate, and their production of 2,163 attachments to privileged emails and redacted versions of 295 attachments demonstrates their measured approach. (Id. at 11.)

But the absolute number or percentage of documents withheld has little bearing on the privilege issue. If a litigant demanded communications between the opposing party and its attorneys regarding the subject matter of the litigation, it would not be surprising for the opposing side to withhold 100% of the responsive documents. On the other hand, if the request pertained to communications between the opposing side and its outside vendors, withholding even a single responsive document may raise reasonable suspicion. This is why individualized assessment of documents is critical.

Plaintiffs also argue the Log descriptions for this category of documents suggest they include non-privileged information. For example, they point to a withheld attachment Defendants described as a "draft presentation containing a request for legal advice regarding communications with FAA concerning MCAS" prepared by an engineer, (id. at 10), and a withheld email between three non-attorneys described as concerning "legal advice regarding draft Board report concerning RTS Status," (id. at 9-10). Both entries, Plaintiffs say, showcase Defendants' "indiscriminate approach" to withholding documents. (Id. at 8-11.)

Plaintiffs further contend that attachments to privileged communications must have an independent basis for privilege to be withheld. There are diverging opinions in this district on this issue. But the prevailing view—and the one shared by this court—is described at length in *Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, 740 F. Supp. 3d 685, 702-711 (N.D. Ill. 2024). The *Linet* court finds that attachments do not require an independent basis to be withheld as privileged because the act of transmitting or communicating facts to counsel for the purpose of seeking legal advice can be privileged even where the underlying facts are not. *Id.* at 707-08 ("A large set of lower courts have interpreted [*Upjohn Co. v. United States*, 449 U.S. 383 (1981)] to mean that even though the underlying content of the independently-discoverable attachments is not privileged, the act of sending the attachments is privileged . . . ." (quoting *Willis Elec. Co. v. Polygroup Trading Ltd.*, No. 15 CV 3443, 2021 WL 568454, at *7 (D. Minn. Feb. 16, 2021))). For example, in a case in which the same document was sent to counsel and a non-lawyer union representative, "[t]he

19

attachment provided to [the union representative was deemed] not privileged because it was produced independently to [the union representative] for purposes of non-legal advice," and therefore the plaintiff only had to produce "the version sent to [the] union representative." *Belcastro v. United Airlines, Inc.*, No. 17 CV 1682, 2021 WL 1531601, at *6 n.2 (N.D. Ill. April 19, 2021).

As Defendants point out, Plaintiffs' reliance on *Muro v. Target Corp.*, No. 04 CV 6267, 2006 WL 3422181, at *5 (N.D. Ill. Nov. 28, 2006) ("*Muro I*"), is misplaced. (Mot. at 10.) The court in *Muro I* found that "[a]ttachments containing business, not legal information, cannot be privileged." (Id.) But that decision was later overturned, and the ultimate outcome is more consistent with Defendants' position here. *See Muro v. Target Corp.*, 250 F.R.D. 350, 363 n.21 (N.D. Ill. 2007) ("*Muro II*") ("[C]ommunications of facts are privileged even if the original facts are not."). In short, "when [communications] to counsel include[ ] certain attachments, the fact that those documents were attached may be privileged, even if the originals are not." *Linet*, 740 F. Supp. 3d at 705 (citing *Muro II*, 250 F.R.D. at 363 n.21 (internal citations omitted)); *see also Rainey v. Plainfield Cnty. Consol. Sch. Dist. No. 202,* No. 07 CV 3566, 2009 WL 1033654, at *2 (N.D. Ill. April 16, 2009) ("If legal advice is requested regarding the attachments, the communication, including any attachments, sent to the attorney are privileged.").

The inquiry then turns on whether the Log descriptions for these categories of documents are sufficient to determine whether Defendants are properly withholding the attachments—and this court finds several examples of entries that qualify as

such. For instance, Entry Nos. 5,082 ("Email requesting legal advice regarding draft Board report concerning RTS status."), 6,352 ("Email requesting legal advice regarding communications with DOT IG concerning MCAS."), 11,620 ("Email providing legal advice regarding communications with FAA concerning RTS status."), and 11,597 ("Email requesting legal advice regarding interpretation of employment policy."), each provide the type of communication withheld, the reason it is privileged, and the subject matter of the information that is privileged. The court also finds certain descriptions for "spreadsheets" (e.g., Entry Nos. 10,501, 10,507, 8,629) and "presentations" (e.g., Entry Nos. 8,475, 9,239)—that is, "providing," "requesting," "containing," or "providing information to assist in rendering" legal advice regarding communications with the FAA—to be adequate.

## C. Board Materials

Plaintiffs next complain that Defendants have improperly withheld more than 500 documents related to board meetings and materials the board considered. (Mot. at 11.) Plaintiffs argue that these documents are business records that are not privileged. (Id.) Defendants respond that they withheld a limited number of board-related materials because they consist of drafts "on which lawyers were providing legal advice or for which legal advice was being sought." (Opp. at 11.) At the same time, they say they produced all other board materials and minutes. (Id.)

Plaintiffs are correct that "the minutes of the directors and committee meetings are taken in the ordinary course of business" and do not fall under the ambit of the attorney-client privilege. *United States v. S. Chi. Bank*, No. 97 CR 849-1, 1998

WL 774001, at *8 (N.D. Ill. Oct. 30, 1998). It is equally clear that draft materials—including board materials—where the "attorney is acting as a legal advisor" may be withheld. *See RBS Citizens*, 291 F.R.D. at 217 (citing *Burden-Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir. 2003)). While Plaintiffs express concerns that it is "highly unlikely that every piece of information on every page of these documents constitutes privileged information," (Mot. at 12), draft materials reflecting consultation with "attorneys about what to include in such drafts, what to remove from them, and ultimately what ought to be the contents of the final document" qualify for protection under the attorney-client privilege, *Washtenaw Cnty.*, 2020 WL 3977944, at *6.

Defendants rely on *Washtenaw County* for their position, and while the draft documents at issue there were "'draft' press releases, public disclosures, or shareholder communications," rather than draft board materials, the same principle adopted in that case applies here. *See id.* Like this suit, *Washtenaw County* was brought under Section 10(b), and the withheld documents related to a corporate defendant's request for legal advice regarding company performance communications, which ultimately would enter the public record. *Id.* ("[D]isclosures to investors are critically important for corporations in view of the securities laws that Plaintiffs here assert were violated by [Defendants], so it is no surprise that [Defendants] would seek legal advice about them."). The court finds this reasoning persuasive here. The critical issue thus hinges on whether the Log descriptions are sufficient to permit Plaintiffs and the court to assess the privilege assertion.

The court finds that the descriptions, while "terse" as Plaintiffs point out, are largely sufficient to assess the privilege claim. For example, 73 entries are described as "[d]raft letter[s] providing information to assist in rendering legal advice regarding draft Board report concerning RTS status." (E.g., Entry Nos. 4,545, 5,527.) As such, they "describe the nature of the documents" as Rule 26 requires, while giving an "indication that [the withheld document] was created by or for an attorney" to provide information to assist in seeking legal advice. *RBS Citizens*, 291 F.R.D. at 218-19.

## D.    Non-Lawyers

Plaintiffs next argue that based on their review of senders, recipients, and document descriptions in the Log, Defendants improperly withheld around 250 documents that appear to be communications between non-lawyers, which Plaintiffs assert cannot be privileged. (Mot. at 12-13.) Defendants respond that despite the communications being between non-lawyers, these documents reflect the substance of confidential attorney-client communications. (Opp. at 12-13.) As discussed, the attorney-client privilege "extends only to communications between a client and a professional legal advisor." *United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997). As such, communications between non-lawyers typically are not privileged. But such communications may be properly withheld if they include the substance of privileged legal advice received. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006), *supplemented*, 432 F. Supp. 2d 794 (N.D. Ill. 2006) (citing *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir.2000)). As the *Washtenaw County* court observed, it "is not implausible to believe that employees might receive legal advice

from in-house counsel and then disseminate it among themselves." *Washtenaw Cnty.*, 2020 WL 3977944, at *4. The court could easily imagine that was the case here, resulting in extended discussions between non-attorneys being privileged because they detail how those non-attorneys "understand [legal advice] in order to follow [it] and ensure the corporation's compliance with the law." *Id.*

Defendants' assertion of work-product protection for several documents is also not inherently improper. A document created by a non-lawyer may be properly withheld if it was prepared for a party's attorney and "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (internal citation and quotation omitted). In support of the uncontested notion that documents prepared for non-litigation purposes receive no work-product protection, Plaintiffs cite to *Livingston v. City of Chicago*, No. 16 CV 10156, 2021 WL 3487347 (N.D. Ill. Aug. 9, 2021). (Mot. at 13.) There, the documents at issue were communications between the city and an outside consultant related to operational changes to physical abilities tests used by the city's paramedic academy. *Livingston*, 2021 WL 3487347 at *4. An *in camera* review showed that the withheld documents "focus[ed] solely on operational concerns" regarding the tests "as well as the potential need to modify" them and suggested that litigation may eventually arise. *Id.* In other words, the documents did not reflect legal work product generated in anticipation of litigation.

Unlike in *Livingston*, Defendants here reasonably anticipated dozens of lawsuits following two plane crashes that killed all passengers and crew members.

That non-lawyers "prepared or obtained [documents] because of the prospect of litigation" is of no significance. *See Logan*, 96 F.3d at 976-77. That said, the court appreciates Plaintiffs' concerns that Defendants may have either over-withheld or offered descriptions that are not detailed enough to allow Plaintiffs or the court to assess the privilege claim. For example, Defendants withheld around 126 documents described as "[e]mail[s] requesting legal advice" or emails "containing a request for legal advice" on several issues, including MCAS, draft board reports, and RTS status. Defendants should clarify the nature of these requests because it is unusual for a party to request legal advice from non-lawyers. Although the court can imagine scenarios where this may occur, Rule 26 demands specificity and places the burden on the withholding party. Based on the limited information available in the descriptions, these requests appear to be "emails between non-attorneys in which the sender mentions that he plans to seek, or has sought, legal input," *Nucap Indus. Inc.*, 2017 WL 3624084, at *2, or mostly non-privileged emails that may include privileged information. If that is the case, the court expects Defendants to produce these communications in redacted form.

For about 134 other entries, withheld communications are described as "[e]mail[s] containing legal advice" regarding numerous issues, including a draft board report. While the court suspects these documents reflect discussions between non-lawyers about how to comply with legal advice, it is not clear from the descriptions themselves. To the extent these communications include business information in addition to legal advice, they should be redacted to conceal only the

legal advice rendered and not entirely withheld. Defendants are ordered to reassess these documents and redact and produce any that are not entirely privileged, along with an amended privilege log reflecting updates.

### E.    Attorney Copied

Plaintiffs next claim Defendants wrongly withheld around 475 communications where their attorneys were merely copied. (Mot. at 13.) They argue that Defendants "simply cop[ied] a lawyer on an otherwise nonprivileged communication," which does "not transform the non-privileged document into a privileged one." (Id. at 13 (quoting *McCullough v. Fraternal Ord. of Police, Chi. Lodge 7*, 304 F.R.D. 232, 237 (N.D. Ill. 2014)).) They also complain that Defendants' log descriptions "provide no indication of counsel's actual legal advice or the solicitation of such advice." (Id. at 14.) The parties agree that simply copying a lawyer on "something other than legal advice" does not mean the communication "suddenly become[s] cloaked with the privilege." *Washtenaw Cnty.*, 2020 WL 3977944, at *5 (citing *Urban 8 Fox Lake Corp.*, 334 F.R.D. at 160-61). But it is unclear whether that happened here.

Defendants respond that Plaintiffs mischaracterize these withheld communications and that they "applied a doctrinally rigorous approach to communications involving attorneys," rather than withholding communications simply because an attorney was copied on them. (Opp. at 13-14.) Indeed, they point to about 1,500 non-privileged communications they produced to Plaintiffs even though counsel was copied on them to support their assertion that their approach was

not indiscriminate. (Id.) The court agrees with Defendants that withholding communications where counsel is only copied is not inherently problematic if the primary purpose of the communication relates to the rendering or discussion of legal advice. *Washtenaw Cnty.*, 2020 WL 3977944, at *5 (citing *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.,* 326 F.R.D. 176, 181 (N.D. Ill. 2018)). It is easy to imagine a scenario in which one employee emails another, copying counsel, for purposes of sharing legal advice the sending employee received from copied counsel. This type of communication can be privileged.

Several entries provide sufficient information for the court to assess the privilege assertion. For example, Entry Nos. 2,892 ("Email containing legal advice regarding communications with EASA concerning Lion Air Flight 610 accident."), 7,699 ("Email containing legal advice regarding draft company statement concerning Lion Air Flight 610 accident."), and 9,166 ("Email containing legal advice regarding communications with NTSB concerning Lion Air Flight 610 accident."), each provide sufficient information regarding the form, content, and basis for the asserted privilege, even if the attorney is merely copied on the communications.

**F.    Third-Party Disclosure**

Finally, Plaintiffs complain that Defendants improperly withheld 25 documents because they waived their privilege over them when the documents were disclosed to third parties.[3] (Mot. at 14-15.) For support, Plaintiffs point to several

---

[3] The court notes that the Log describes at least seven disputed entries in this category as falling under the attorney-client privilege, but the amended log produced after Plaintiffs filed the Motion suggests these documents are protected by the work

examples of "draft" documents concerning company statements that a public relations firm prepared. (Id.) Defendants respond that Plaintiffs misstate the law of waiver here because they withheld these documents under the work-product doctrine, rather than the attorney-client privilege. (Opp. at 14.)

As detailed above, work-product protection applies to documents that, "in light of the nature of the document and the factual situation in the particular case . . . can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Binks,* 709 F.2d at 1118-19 (emphasis in original) (internal citations omitted); *see also Logan,* 96 F.3d at 977. Defendants bear the burden of establishing that work-product protection applies to each document. *See Urb. 8 Fox Lake Corp.*, 334 F.R.D. at 156. And as Defendants point out, third-party disclosure is treated differently depending on the privilege. Whereas "voluntary disclosure to a third party can constitute a waiver of the attorney-client privilege, this will not suffice to waive the work product doctrine." *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 287 n.5 (N.D. Ill. 1997).

This contrasting treatment stems from the "very different goals the privileges are designed to effectuate." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736 (N.D. Ill. 2014). As the name suggests, the attorney-client privilege promotes the attorney-client relationship by protecting the confidentiality of communications

---

product doctrine instead. (Compare, Mot., Ex. Q, Entry No. 5,825 ("[d]raft document containing legal advice regarding draft company statement concerning RTS status"), with (Opp., Ex. 2, Entry No. 5,825 ("[d]raft document prepared at the direction of counsel in anticipation of litigation regarding draft company statement concerning RTS status,"); see also Entry Nos. 2,059, 2,061, 2,213, 2,228, 4,585, 5,827.) Because Defendants are ordered to review each entry in this category for other reasons, the court need not address them separately.

between clients and their attorneys. *Id.* (citing *Upjohn*, 449 U.S. at 389). In the case of third-party involvement, "the attorney-client privilege should be limited to instances where [the] third party . . . assists a lawyer in giving legal advice, and where the third party's participation was required to enable the attorney to render legal advice." *Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009). Thus, disclosure of attorney-client information to anyone who is not "necessary to the obtaining or giving of legal advice" results in waiver of the privilege. *See Motorola Sols.*, 2018 WL 1804350, at *4. In contrast, the work-product doctrine promotes the adversarial system by protecting the confidentiality of documents prepared by a party's attorney in anticipation of litigation. *Miller UK Ltd.*, 17 F. Supp. 3d at 736 (citing *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1022 (7th Cir. 2012)). Because the work-product doctrine aims "to protect an attorney's work product from falling into an adversary's hands, disclosure to a third party does not automatically waive the protection." *Towne Place Condo. Ass'n*, 284 F. Supp. 3d at 898; *see also Union Pac. Res. Co. v. Nat. Gas Pipeline Co. of Am.*, No. 90 CV 5378, 1993 WL 278526, at *2 (N.D. Ill. July 20, 1993) ("It is clear that mere disclosure to a third party is not necessarily sufficient to constitute a waiver of the [work-product] privilege.")).

Instead, waiver occurs when protected work product is "disclosed in a manner that substantially increase[s] the opportunity for potential adversaries to obtain the information." *Miller UK Ltd.,* 17 F. Supp. 3d at 736 (quoting *Appleton Papers*, 702 F.3d at 1025) (internal quotation marks omitted). For example, if while valuing a claim, a litigant shares work product regarding a case with a data analytics firm

under a non-disclosure agreement, the protection over the disclosed work product would not be waived. However, if that same litigant filed the work product on a public docket—even in an unrelated case—the opportunity for adversaries to obtain that information substantially increases, and the protection would be waived.

Here, it is unclear from the descriptions whether the challenged documents reflect work product. Defendants say that "Plaintiffs do not challenge that the 28 documents at issue contain attorney work product." (Opp. at 14.) But Plaintiffs argue the opposite, maintaining that "Defendants do not have a valid privilege claim for these documents." (Mot. at 15.) Indeed, many of the descriptions for documents in this category are deficient and could describe either protected work product or documents arising in the ordinary course of business. The log includes a terse description for all the documents in this category that includes an iteration of the conclusory phrase "prepared in anticipation of litigation." Courts frown on the use of such conclusory language in privilege logs. *See, e.g., RBS Citizens,* 291 F.R.D. at 218. For example, Entry No. 7,526 is described as an "[e]mail prepared in anticipation of litigation regarding pilot questions," and Entry No. 11,063 is an "[e]mail prepared in anticipation of litigation regarding response to inquiries from customer(s) regarding 737 MAX." There is little else in the descriptions that would allow Plaintiffs or the court to assess the work-product claim. While Defendants need not disclose the subject pilot questions or customer inquiries, they must provide more information in the Log.

## Conclusion

For the foregoing reasons, Plaintiffs' motion is granted in part and denied in part. While the court finds that Defendants engaged in good-faith effort to comply with Rule 26(b)(5), the Log requires more details to be in full compliance.

ENTER:

Young B. Kim
United States Magistrate Judge